James and Marie SMITH, Parents of Richard Allen Smith, Deceased, Appellants (Plaintiffs Below),

v.

METHODIST HOSPITAL OF INDIANA, INC., Appellee (Defendant Below).

No. 49A02–8908–CV–381.

Court of Appeals of Indiana, Second District.

April 18, 1991.

Gregory S. Carter, Terre Haute, for appellants.

Kevin Charles Murray, Peter H. Pogue, Indianapolis, for appellee.

SHIELDS, Presiding Judge.

James and Marie Smith (Smiths) appeal the trial court's grant of summary judgment in favor of Methodist Hospital of Indiana, Inc. (Methodist) on Smiths' claim for intentional infliction of emotional distress grounded upon Methodist's alleged fraudulent conduct.

We affirm.

## ISSUE

Whether the trial court erred in granting Methodist summary judgment because:

1. a genuine issue of material fact existed whether Methodist made a fraudulent representation to Smiths which was reasonably relied upon by Smiths and which was a proximate cause of emotional distress;

2. Methodist owed Smiths a duty to disclose their son's condition to them and its failure to do so was a proximate cause of emotional distress.

## FACTS

On April 20, 1985 Richard Smith, age twenty (20), was involved in a one car accident in Parke County, Indiana. He was discovered at approximately 5:42 a.m. in full cardiopulmonary arrest. He was treated at Culver Union Hospital in Crawfordsville before being transferred to Methodist.

After an initial examination, the physicians at Methodist believed Richard was brain dead. Dr. Daniel F. Cooper, a neurological physician who examined Richard, made the admission and consultation note:

IMPRESSION: Brain death, left subdural hematoma.

At this time I do not feel that any type of surgery is indicated on this patient. He is not viable at present, I will plan to support him. His family is coming to the hospital.

Record at 271. Dr. Ralph Tyner, a Methodist resident who treated Richard, made the following entry on Richard's chart:

Impression: facial lacerations with isolated head injury and clinical brain death. Plan, nuclear medicine brain-flow scan on admission to intensive care unit. Placement of pulmonary artery catheter in arterial line for possible organ donation.

Record at 125.

Richard's father, James, arrived at Methodist soon after his son but Marie, Rich-

ard's mother, did not arrive until approximately 5:30 p.m. Shortly after his arrival, James was asked about the possibility of donating Richard's organs for transplant purposes. He delayed a decision until Marie arrived.

At Methodist, James spoke with Rev. Glenn Calkins, a hospital chaplain. Rev. Calkins encouraged James to speak to the unconscious Richard and James did. Rev. Calkins also told James that if Richard lived "he wouldn't be the same Richard you knew." Record at 24. When Marie arrived, she also was encouraged to speak to the still unconscious Richard. At the time of these conversations Rev. Calkins did not believe "that a possibility existed that the Smith boy was going—could possibly live[.]" Record at 193.

Smiths were not advised of Richard's possible brain death or that the possibility was confirmed hours later by a nuclear medicine brain-flow scan.[1] At approximately 6:30 p.m., Smiths were approached by Methodist personnel who requested a release to allow Methodist to harvest Richard's kidneys for donation purposes if the situation presented itself. They refused. Richard was pronounced dead at 7:20 p.m.

Smiths initiated an action for intentional infliction of emotional distress based upon Methodist's fraudulent conduct. On April 11, 1989 the trial court granted Methodist's motion for summary judgment. Smiths appeal.

## DISCUSSION

 In reviewing a grant of summary judgment, we apply the same standard as the trial court. Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Greives v. Greenwood* (1990), Ind.App., 550 N.E.2d 334. If the trial court's entry of summary judgment is sustainable on any

theory or basis in the record, we will affirm the judgment. *Watson v. Medical Emergency Services* (1989), Ind.App., 532 N.E.2d 1191.

 Smiths allege Methodist intentionally inflicted emotional distress upon them through fraudulent acts of its personnel.[2] In Indiana, the general rule is that damages for the intentional infliction of emotional distress are recoverable only when the damages are accompanied by, and result from, a physical injury. *Cullison v. Medley* (1990), Ind.App., 559 N.E.2d 619. There is, however an exception to the general rule:

> Indiana courts have awarded compensatory damages for mental anguish unaccompanied by a physical injury in certain tort actions involving the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance.

*Naughgle v. Feeney–Hornak Shadeland Mortuary, Inc.* (1986), Ind.App., 498 N.E.2d 1298, 1300 (citing *Charlie Stuart Oldsmobile v. Smith* (1976), 171 Ind.App. 315, 357 N.E.2d 247 *modified on other grounds*, 175 Ind.App. 1, 369 N.E.2d 947). Thus, the exception requires a host—either physical injury or intentional or malicious tortious conduct. Smiths' asserted host is Methodist's alleged fraudulent conduct. The fraudulent conduct about which Smiths claim a material fact exists includes statements made by Methodist as well as statements Methodist failed to make.

 The elements of fraud based upon a statement are a material representation of a past or existing fact made by the defendant with knowledge or in reckless ignorance of its falsity, justifiably relied upon by the complaining party, and which proximately causes injury to the complaining party. *Pugh's IGA, Inc. v. Super Food Services, Inc.* (1988), Ind.App., 531 N.E.2d

---

1. Although the examining and treating physicians believed Richard was brain dead after their initial examination, a nuclear medicine brain-flow scan was necessary for a positive diagnosis. Richard's brain-flow scan was ordered at 2:10 p.m. and was in process at 3:45 p.m. The record does not reveal when the brain-flow scan was completed and the results interpreted.

2. For purposes of this appeal we assume the chaplain and the physicians in question are employees of Methodist Hospital.

1194. In the instant case, the statements allegedly made by Methodist personnel are the statements made by Rev. Glenn Calkins.

■ Smiths allege Calkins made two fraudulent statements to them. Smiths claim that after they entered the hospital, Calkins encouraged them to go in and talk to Richard. In addition, Calkins told James that if Richard lived "he wouldn't be the same Richard you knew." Record at 24. A fraudulent statement must assert a past or existing fact. Neither of these statements asserts a past or existing fact; therefore, they cannot be fraudulent and cannot form the basis for Smiths' claim.

■ Even though fraud by false statement of fact was not present, Smiths may maintain their action if Methodist failed to disclose facts which it had a duty to disclose to them. This type of fraud occurs when "one having a duty to disclose certain facts to another knowingly fails to do so, and as a result, the other relies upon this nondisclosure to his detriment." *Brown v. Indiana National Bank* (1985), Ind.App., 476 N.E.2d 888, 891.

Smiths' complaint is based upon the existence of a duty Methodist owed them, independent of the duty Methodist owed Richard, to advise them, as Richard's parents, of Richard's condition including the physicians' opinion Richard was brain dead and of the fact that opinion was subsequently confirmed.

Therefore, we are not concerned with an injury allegedly arising from lack of consent to a course of medical treatment. Rather the question raised is whether Methodist had an independent duty to disclose the incompetent patient's *condition* to the patient's family. We hold Methodist did not owe a duty to Smiths to advise them of Richard's condition where that information was not related to a course of medical treatment. Because Methodist did not have a duty to disclose Richard's condition to Smiths, Methodist did not act fraudulently. Since neither fraudulent misrepresentation nor fraudulent concealment was present, the trial court was correct in granting Methodist's motion for summary judgment.

Judgment affirmed.

CHEZEM and SULLIVAN, JJ., concur.