Donald HOPSTER, Individually and as Personal Representative of the Estate of Patricia H. Hopster, Appellant–Plaintiff,

v.

Mary BURGESON, M.D., Thomas Gootee, M.D., Timothy H. McClure, M.D., Craig Watts, M.D., and Stephen L. DeWitt, D.O., Appellees–Defendants.

No. 19A01–0008–CV–291.

Court of Appeals of Indiana.

June 21, 2001.

Richard D. Hailey, Denise K. Young, Ramey & Hailey, Indianapolis, IN, Attorneys for Appellant.

Michele S. Bryant, Catherine L. Michel, Bamberger, Foreman, Oswald and Hahn, LLP, Evansville, IN, L. Alan Whaley, Sean T. Devenney, Ice Miller, Indianapolis, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant, Donald Hopster (Donald), Individually and as Personal Representative of the Estate of Patricia H. Hopster, appeals the trial court's grant of summary judgment in favor of the Defendants–Appellees, Mary Burgeson, M.D. (Burgeson), Thomas Gootee, M.D. (Gootee), Timothy H. McClure, M.D. (McClure), Craig Watts, M.D. (Watts), and Stephen I. DeWitt, D.O. (DeWitt) (jointly referred to as the "Defendants").

We affirm in part, and reverse and remand in part.[1]

### ISSUES

Donald raises four issues on appeal, which we reorganize and restate as follows:

1. Whether the medical malpractice statute of limitations is unconstitutional as applied to a plaintiff who does not suffer an immediate injury.

---

1. Oral argument was held on March 28, 2001, in Indianapolis, Indiana.

2. Whether Patricia's cause of action accrued at the time of her death or when the alleged malpractice occurred.

3. Whether Donald's claim was timely filed pursuant to Indiana's wrongful death statute.

4. Whether the doctrines of fraudulent concealment and/or continuing wrong tolled the statute of limitations with regard to Burgeson.

## FACTS AND PROCEDURAL HISTORY

Donald's wife, Patricia H. Hopster (Patricia), died on March 11, 1994, due to a rupture of her ascending aorta. An autopsy was performed and Patricia's death was determined to be caused by a coarctation of the aorta and a dissecting hematoma of the ascending aorta with rupture into the pericardial sac. Patricia was 45 years old at the time of her death.

On March 11, 1996, Donald, individually, and as the personal representative of Patricia's estate, initiated a wrongful death/medical malpractice action against the Defendants by filing a Proposed Complaint with the Department of Insurance.[2] In his Proposed Complaint, Donald asserts that the Defendants were negligent because the care they rendered to Patricia fell below the accepted standard of care and resulted in the misdiagnosis of Patricia's condition. Donald argues that this misdiagnosis significantly contributed to the decedent's failure to obtain appropriate medical care, which in turn resulted in her death. An Amended Proposed Complaint was filed on March 15, 1996.

On December 19, 1996, Burgeson, Gootee, McClure, Campbell and Watts filed a

Motion for Summary Judgment in the Dubois Circuit Court. In this summary judgment motion, these defendants argued that Donald's Proposed Complaint was not timely filed under the two year medical malpractice statute of limitations, Ind. Code § 34–18–7–1(b). Specifically, these physicians allege that they last provided medical care to Patricia more than two years prior to the filing of the Proposed Complaint. Patricia was last treated by Burgeson, her family physician, on January 28, 1994. Watts, a radiologist, last provided medical care to Patricia on January 20, 1994. McClure, also a radiologist, last provided medical care to Patricia on December 3, 1993. She was last seen by Gootee, a family practitioner, on August 12, 1992. Finally, Campbell, who practices internal medicine, last saw Patricia on July 30, 1990.

DeWitt filed a Motion for Preliminary Determination of Law and Motion for Summary Judgment on April 2, 1997. DeWitt incorporated the arguments asserted by the other defendants, and asserted that Donald's action against him was not timely filed. DeWitt last saw Patricia on December 3, 1993, in the emergency department of Memorial Hospital and Health Care Center in Jasper, Indiana.

Donald filed responses to these motions, arguing that the Court of Appeals decision in *Martin v. Richey*, 674 N.E.2d 1015 (Ind. Ct.App.1997), *vacated, trans. granted*, 711 N.E.2d 1273 (Ind.1999), was dispositive of the statute of limitations issue and thus, Donald requested that the trial court deny the Defendants' motions for summary

---

2. Memorial Hospital and Health Care Center and St. Joseph's Hospital were also named defendants in Donald's Proposed Complaint; however, these defendants were later dismissed from this action with prejudice. Marc W. Campbell, M.D. (Campbell), was addition-

ally named as a defendant in this action. Campbell's motion for summary judgment was denied by the trial court on July 19, 2000, and thus, he is not a party to this appeal although he remains a party in the trial court.

judgment.[3] Donald further argued that the statute of limitation with regard to Burgeson was tolled based on the fraudulent concealment and continuing wrong doctrines. Thereafter, the Indiana Supreme Court granted transfer in *Martin* and, as a result, the trial court took this matter under advisement until a decision was issued by the supreme court.

The supreme court issued its opinion in *Martin v. Richey*, 711 N.E.2d 1273 (Ind. 1999), on July 8, 1999, and on August 12, 1999, the Defendants filed their Submission of Additional Authority in Support of Summary Judgment, to which Donald filed a Response. On May 23, 2000, a hearing on the motions for summary judgment was held. On July 19, 2000, the trial court issued its Orders granting summary judgment in favor of the Defendants, Burgeson, Gootee, McClure, Watts, and DeWitt. In reaching this decision, the trial court concluded that Patricia's death was the event that should have alerted her personal representative to the possibility of a malpractice action against the Defendants. Relying on the June 28, 2000 decision in *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692 (Ind.2000), the trial court found that Donald filed his Proposed Complaint with regard to Burgeson, Gootee, McClure, Watts, and DeWitt after the statute of limitations had expired because he discovered, or could have discovered, the alleged malpractice by these physicians within the statutory time period.

However, relying on *Martin*, 711 N.E.2d 1273, the trial court denied the motion for summary judgment as to defendant Campbell, since Campbell last saw Patricia on July 30, 1990, and as a result, Donald could not have discovered the alleged malprac-

tice during the statutory time period as the event triggering his discovery of possible malpractice was Patricia's death on March 11, 1994. Consequently, as Campbell's motion for summary judgment was denied, he is not a party to this appeal.

## DISCUSSION AND DECISION

### Standard for Summary Judgment

When reviewing an entry of summary judgment, this court applies the same standard as the trial court. *City of Fort Wayne v. Kotsopoulos*, 704 N.E.2d 1069, 1070 (Ind.Ct.App.1999). "Summary judgment is appropriate when the evidentiary matter designated to the trial court shows both that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Aide v. Chrysler Financial Corp.*, 699 N.E.2d 1177, 1180 (Ind.Ct.App.1998), *trans. denied.* We will affirm a summary judgment on appeal if it is sustainable under any theory or basis found in the evidentiary matter designated to the trial court. *J.S. Sweet Co., Inc. v. White County Bridge Com'n*, 714 N.E.2d 219, 222 (Ind. Ct.App.1999). Although any doubts as to any fact or inference to be drawn therefrom will be resolved in favor of the nonmovant. *Erie Ins. Co. v. George*, 681 N.E.2d 183, 186 (Ind.1997). However, when the movant asserts the statute of limitations as an affirmative defense and establishes that the action was filed after the statutory deadline, the burden shifts to the nonmoving party to establish an issue of material fact that avoids the defense. *Boggs*, 730 N.E.2d at 695. Additionally, when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to

**3.** Initially, Donald conceded that the statute of limitations had expired with regard to Gootee, McClure, Campbell and Watts, and indicated he would agree to their dismissal from

this action. However, based on the Court of Appeals decision in *Martin*, Donald subsequently notified the trial court that he was no longer willing to dismiss these defendants.

the undisputed facts. *Deaton v. City of Greenwood*, 582 N.E.2d 882, 884 (Ind.Ct. App.1991). "When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter *de novo*." *Mahowald v. State*, 719 N.E.2d 421, 424 (Ind.Ct.App.1999).

### I. Whether the medical malpractice statute of limitations is unconstitutional as applied to a plaintiff who does not suffer an immediate injury.

Donald asserts that the medical malpractice statute of limitations, which begins to run from the date of the alleged malpractice, is unconstitutional as applied to persons such as Patricia who do not suffer immediate injury. Donald contends that in this situation, the medical malpractice statute of limitations violates the Privileges and Immunities Clause found in the Indiana Constitution. This clause provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." IND. CONST. art. I, § 23.

The analysis applicable to evaluating whether a statute violates the Privileges and Immunities clause was set forth by our supreme court in *Collins v. Day*, 644 N.E.2d 72 (Ind.1994). In *Collins*, the court enunciated a two prong test in making this evaluation. *Id.* at 80. "First, the disparate treatment accorded by the legislation must be reasonably related to the inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly

applicable and equally available to all persons similarly situated." *Id.*

In *Martin*, 711 N.E.2d 1273, the supreme court applied the *Collins* test and found that the occurrence based medical malpractice statute of limitations failed to pass muster as applied to Martin because "unlike many other medical malpractice plaintiffs, she could not reasonably be expected to discover the asserted malpractice and resulting injury within the two-year period given the nature of the asserted malpractice and of her medical condition." *Id.* at 1282. However in *Boggs*, 730 N.E.2d 692, the plaintiff discovered the alleged malpractice eleven months before the statute of limitations expired, and the supreme court held that, "the Indiana Constitution is not violated by application of the Medical Malpractice Act's two-year limitations period to bar a claim that was discovered several months before the limitations period expired and well within the two years of its occurrence." *Id.* at 694.

Nonetheless, Donald concludes that Ind. Code § 34–18–7–1(b) [4] is unconstitutional as applied to persons such as Patricia who suffered a delayed injury. Applying the *Collins* test to this case, Donald contends that under the second criterion, the two groups, those who suffer immediate injury due to malpractice and those who suffer delayed injury, are treated differently. Donald contends that those who suffer immediate injury have a full two years to file suit while those who suffer delayed injury have less than two years to pursue their claim.

■ In response, the Defendants initially assert that Donald failed to raise this argument in the trial court and thus,

---

4. I.C. § 34–18–7–1(b) provides: "A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been pro-

vided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect, except that a minor less than six (6) years of age has until the minor's eighth birthday to file."

waived it for appellate review.[5] "When an issue is not presented before the trial court, appellate review of that issue is waived." *Pitman v. Pitman*, 717 N.E.2d 627, 633 (Ind.Ct.App.1999). However, a review of the Record shows that Donald presented arguments to the trial court with regard to the constitutionality of the medical malpractice statute of limitations. Moreover, the trial court apparently recognized that this issue was before it because it took the matter under advisement until the supreme court issued its opinion in *Martin*, 711 N.E.2d 1273, addressing the constitutionality of the statute. Therefore, we find Defendants' waiver argument to be without merit.

Next, the Defendants contend that the medical malpractice statute of limitations has been found to be an occurrence based statute and under the circumstances of this case does not violate the Indiana Constitution. In *Martin*, the supreme court noted that:

> This Court previously has construed this medical malpractice statute of limitations as an "occurrence" rather than a "discovery" statute. [citations omitted] As such, an action for medical malpractice generally must be filed within two years from the date the alleged negli-

gent act occurred rather than from the date it was discovered.

*Id.* at 1278.

As previously noted, in *Martin*, the supreme court found the medical malpractice statute of limitations unconstitutional as applied to the plaintiff because she could not reasonably be expected to discover the asserted malpractice and resulting injury within the two-year period. *Id.* at 1282. However, the Defendants argue that this case falls outside the exception set forth in *Martin* because each of Patricia's physicians (with the exception of Campbell) treated her within two years of her death and thus, nothing prevented Donald from filing suit within the two-year statutory period.

Defendants further argue that the supreme court's decision in *Boggs* has resolved this issue. The *Boggs* court discussed the constitutionality of the statute under Article I, Section 23 of the Indiana Constitution, stating:

> This Court has already resolved the constitutionality of an occurrence-based medical malpractice statute of limitations. The plaintiff may or may not be immediately aware of an injury from an act of malpractice and also may or may not be aware that the injury was attributable to an act or omission by a health

5. Defendant DeWitt, who filed a separate appellee's brief, also argues that Donald has failed to present a cogent argument concerning his claim against DeWitt. The failure to present a "cogent argument" supported by proper authorities waives an issue for appellate review. *Reyburn v. State*, 737 N.E.2d 1169, 1172 (Ind.Ct.App.2000); Ind. Appellate Rule 8.3(A)(7). DeWitt claims that Donald failed to include in his brief any facts concerning the medical treatment DeWitt provided to Patricia, thus depriving this court of a sufficient basis upon which to decide this case on its merits. However, the facts relevant to the matter at issue here, whether Donald timely filed his claim against DeWitt within

the applicable statute of limitations, are not at issue. The parties agree that Patricia was treated by DeWitt on December 3, 1993, and that Donald filed this cause of action on March 11, 1996. These are the key facts relevant to the summary judgment issue and they are not in dispute. Further, Donald has not asserted a theory of fraudulent concealment or continuing wrong with regard to DeWitt. Thus, there are no facts at issue with regard to Donald's claim against DeWitt, and the matter is a pure legal question. Therefore, because Donald's legal argument equally applies to all of the Defendants, we find DeWitt's assertion that Donald failed to present a cogent argument to be without merit.

care provider. Unless a plaintiff is immediately aware of both, there will be a lag between the occurrence and the discovery of the claim. Thus, medical malpractice plaintiffs will frequently, if not virtually always, have varying amounts of time within which to file their claims before an occurrence-based statute of limitations expires. But that difference in time to file is not sufficient to create an impermissible classification under Article I, Section 23. All statutes of limitations are to some degree arbitrary. The logic of the Court of Appeals would render every statute of limitations or repose a discovery-based statute as a matter of constitutional law. This would significantly undermine the fundamental objective of limitations periods, which recognizes value in the certainty generated by a known date after which a claim is either asserted or expires. Moreover, extending the statute has a price. Memories fade and witnesses and physical and documentary evidence can become unavailable over time. *Martin* subordinates these considerations to the extent necessary to permit a claim to be brought at all. Here, however, we are not facing the practical impossibility of asserting the claim. Rather, Boggs or Carolyn could have brought a claim within the statutory period. **As long as the claim can reasonably be asserted before the statute expires, the only burden imposed upon the later discovering plaintiffs is that they have less time to make up their minds to sue.** The relatively minor burden of requiring a claimant to act within the same time period from the date of occurrence, but with less time to decide to sue, is far less severe than barring the claim altogether.

\* \* \*

We hold that as long as the statute of limitations does not shorten this window of time so unreasonably that it is impractical for a plaintiff to file a claim at all, as it did in *Martin* and *Van Dusen,*[6] it is constitutional as applied to that plaintiff. The statute reflects a legislative judgment to define the class who may proceed as those who discover their claim in time to file within two years after the occurrence. That judgment is entitled to deference, and permits all within the class, including Boggs, to bring their case to court, if they choose to do so, within the statutory period.

The Court of Appeals notes the possibility of discovery a very short time before the expiration of the limitations period. There may be situations where, like *Martin* and *Van Dusen,* discovering and presenting the claim within the time demanded by the statute is not reasonably possible. If so, the statute as applied under those circumstances may run afoul of the Indiana Constitution. But Boggs is not in that category. In the future, this Court may be presented with facts that support a claim such as the hypothetical eve of midnight discovery posited by the Court of Appeals. For the moment, however, it remains a hypothetical. Indeed, the problem of a last minute discovery is inherent in any statute of limitations that may be tolled by concealment or related doctrines. It can best be addressed on a case-by-case basis, and, at least in this state, has apparently never arisen.

*Id.* at 697–698 (citations omitted) (emphasis added).

Accordingly, the Defendants conclude that because Donald could have brought his action within the statute of limitations, under *Boggs,* the statute of limitations was

6. *Van Dusen v. Stotts,* 712 N.E.2d 491 (Ind. 1999).

not unconstitutional. We agree that the *Boggs* case controls our decision here.

Anticipating this conclusion, Donald argues that this court should "revisit" the supreme court's decision in *Boggs*. Specifically, Donald argues that this case should be revisited because it violates the Privileges and Immunities Clause of the Indiana Constitution and because the law, as it currently stands, is unworkable and provides no clear guidance to plaintiffs or defendants.

Donald contends that the *Boggs* decision has created a class of medical malpractice victims, those who discover malpractice sometime after its commission but within two years, who are treated differently and less favorably than other victims of medical malpractice. These medical malpractice victims have less time to file suit than the group of medical malpractice victims who discover their cause of action on the day it occurs or those like Melody Martin, who discover their cause of action more than two years after the malpractice occurred. *See Martin,* 711 N.E.2d 1273.

Donald further asserts that *Boggs* fails to provide medical malpractice plaintiffs with a comprehensible and uniform method of determining when a claim must be filed. Depending upon when a claim is discovered prior to the expiration of the statute of limitations, a plaintiff may have a day to file suit or 23 months. The court in *Boggs* found that 11 months was a reasonable amount of time for the plaintiff to file suit. *Id.* at 697. However, Donald argues that this system of determining on a case by case basis whether a plaintiff had a reasonable amount of time remaining to file suit prior to the expiration of the statute, fails to provide a uniform or reliable method for a plaintiff to determine when the statute of limitations expires.

■ In response, the Defendants assert that there is no reason for this court to depart from the *Boggs* decision. The Defendants contend that the legislature has chosen the benefits of occurrence based statute and the courts do not have the power to substitute their judgment for the legislature. "In determining whether a statute complies with or violates Section 23, courts must exercise deference to legislative discretion." *Collins,* 644 N.E.2d at 80. Here, the Defendants argue that the legislature has chosen an occurrence based statute rather than a discovery statute because an occurrence based statute provides for a date certain when a claim should be filed. Defendants claim that adopting a discovery based rule would create confusion and uncertainty.

■ Although we agree that under the current state of the case law there are different classes of medical malpractice plaintiffs, those who discover the alleged malpractice on the date it occurs and have two years to file suit, those who discover the alleged malpractice after it occurs but prior to the expiration of the two year statute of limitations, like Patricia,[7] and those who discover the alleged malpractice after the expiration of the statute of limitations and therefore have no opportunity to file suit prior to the expiration of the statute, we are constrained by the clear language of the supreme court's decision in *Boggs*. It is not within the authority of this court to "revisit" a decision by the Indiana Supreme Court, as Donald urges. However, we do note the peculiar result in this case that is dictated by the *Martin*

---

7. Although the Record is unclear as to the exact date Donald discovered the malpractice, see discussion in section IV.A.2 *infra,* Donald has not disputed that he discovered the alleged malpractice after it occurred, but sometime prior to the expiration of the statute of limitations with regard to the Defendants herein.

and *Boggs* decisions. Here, under *Martin*, Donald is allowed to maintain his claim against Campbell, a physician who had last treated Patricia almost six years prior to Donald filing suit against him, but under *Boggs*, Donald is not allowed to pursue his claims against the other physicians, all of whom treated Patricia more recently than had Campbell.

Nevertheless, we are constrained by the *Boggs* decision, and conclude that the medical malpractice statute of limitations is not unconstitutional as applied to this case.

II. *Whether Patricia's cause of action accrued at the time of her death or when the alleged malpractice occurred.*

■ Donald also asserts that the factual situation of this case is unique from *Martin* or *Boggs* in that Patricia's cause of action did not exist until her death. Donald contends that in *Martin* and *Boggs* the focus was on when these plaintiffs discovered their cause of action, but in this case, Donald argues, no cause of action existed until Patricia's death. In support of this proposition, Donald relies on *Montgomery v. Crum*, 199 Ind. 660, 161 N.E. 251 (1928). In *Montgomery*, our supreme court stated that:

> [T]he [personal injury] statute of limitations begins to run from the time a cause of action accrues, but the accrual of a cause of action, it must be remembered, depends upon the uniting of at least two elements—injury and damages.... The two-year statute of limitations will not begin to run as a shield against the consequences of wrongful acts until the wrongdoer thereby accomplishes an injury to the person of another, for which the law allows indemnity in the form of damages (that is to say, damages susceptible of ascertainment), for not until then would the cause of action accrue to invoke the statute.

*Id.* at 257–259. Consequently, Donald asserts that Patricia's cause of action could not have existed until she was injured as a result of the Defendants' malpractice and that injury did not take place until her death. Thus, Donald concludes that his cause of action could not have accrued until the date of Patricia's death. Therefore, his Complaint, filed on March 11, 1996, was timely since it was filed within two years of Patricia's death on March 11, 1994.

In response, the Defendants argue that this cause of action actually accrued at the time Patricia was allegedly misdiagnosed. Defendants contend that Patricia had a legal right to receive appropriate medical care and any violation of the appropriate standard of care was actionable. The Defendants further assert that a claim could have been brought as soon as Patricia learned of the misdiagnosis, even if she had not died as a result, as the misdiagnosis prevented her from obtaining treatment. Defendants maintain that this conclusion is supported by decisions allowing for a medical malpractice cause of action based on an "increase in the risk of harm." *See Cahoon v. Cummings*, 734 N.E.2d 535, 539 (Ind.2000) and *Mayhue v. Sparkman*, 653 N.E.2d 1384, 1389 (Ind.1995). In *Mayhue*, the supreme court adopted Restatement (Second) of Torts § 323, which allows a patient to recover if he can show that a health care provider deprived him of a significant chance to recover by negligently failing to provide medical treatment. *Id.* at 1389. Consequently, the Defendants conclude that Patricia's cause of action accrued at the time she was allegedly misdiagnosed.

Nonetheless, Donald replies that *Mayhue* and *Cahoon* do not support the Defendants' argument that Patricia's cause of action accrued at the time of the alleged malpractice. Donald asserts that these

cases stand only for the proposition that a plaintiff can recover from a defendant whose negligence significantly increases the probability of the ultimate harm. Donald argues that Patricia did not have a condition that worsened or caused her to deteriorate over time; instead her latent condition suddenly manifested and caused her death. He claims that there was no evidence that a mere delay in treatment would have significantly increased her risk of death, and therefore Patricia's situation does not fit within the parameters of *Mayhue* and *Cahoon*. Donald further argues that if Patricia had discovered the misdiagnosis prior to her death and filed a lawsuit, her action would have been subject to dismissal because there was no injury and no increased risk of harm. Without an injury, Donald argues, Patricia had no cause of action.

However, this court has previously addressed this issue in *Jones v. Cloyd*, 534 N.E.2d 257, 259 (Ind.Ct.App.1989), and stated:

> [B]y explicitly referring to the alleged act, omission or neglect, the legislature intended to avoid the impact of case law dealing with when a cause of action accrues which would extend the time for commencing an action in cases where either injury or damage does not occur until long after the act or omission gave rise to it.

Thus, the *Jones* court clarified that under the occurrence based medical malpractice statute of limitations, the date that the injury occurs is not the controlling factor in determining when the statute of limitations in a medical malpractice action begins to run, but rather the crucial date is the date when the malpractice occurs. Consequently, we find that Donald's argu-

ment here is unsustainable in light of the *Jones* decision.

### III. *Whether plaintiff's claim was timely filed pursuant to Indiana's wrongful death statute.*

■ Donald next contends that his claim was timely filed pursuant to the Indiana Wrongful Death Statute. More specifically, Donald argues that actions for medical malpractice resulting in death may be brought under either the Medical Malpractice Act or the Wrongful Death Statute and therefore, his action was timely filed because it was brought within two (2) years of Patricia's death as required by the Wrongful Death Statute. *See* Ind. Code § 34–23–1–1.[8]

In response, the Defendants first assert that Donald waived this issue because it was not raised in the trial court. *See Pitman*, 717 N.E.2d at 633. Our review of the Record confirms that Donald failed to argue this point in the trial court. In the summary judgment proceedings in the trial court, Donald focused solely on issues relating to the medical malpractice statute of limitations. Thus, Donald has waived this issue for appellate review. *See id.*

Waiver notwithstanding, we find Donald's contention to be without merit as this issue has been previously decided to the contrary in *Frady v. Hedgcock*, 497 N.E.2d 620, 622 (Ind.Ct.App.1986), *reh'g denied, trans. denied*. In *Frady*, we addressed which of two statutes control when an action must be filed where a plaintiff dies due to alleged medical malpractice; either the Wrongful Death Statute or the Medical Malpractice statute of limitations. The *Frady* court held that:

> [T]he statute of limitations for the Medical Malpractice Act is applicable instead

---

**8.** Ind.Code § 34–23–1–1 provides in pertinent part: "When the death of one is caused by the wrongful act or omission of another, the ac-

tion shall be commenced by the personal representative of the decedent within two (2) years, . . ."

of the time period imposed for wrongful death actions. Therefore, an action for wrongful death based upon medical malpractice must be filed within two years of "the date of the alleged act, omission or neglect," not within two years of the date of the death.

*Id.*, 497 N.E.2d at 622; *see also Yarnell v. Hurley*, 572 N.E.2d 1312 (Ind.Ct.App. 1991), *trans. denied.*

In response to this case law, Donald argues that *Frady* was based on an inappropriate extension of the supreme court's decision in *Community Hospital v. McKnight*, 493 N.E.2d 775 (Ind.1986). In *McKnight*, the supreme court held that a person pursuing a claim for medical malpractice which involves a patient's death, does not need to first be appointed personal representative as required by the Wrongful Death Statute. *Id.* at 777. Donald argues that there was nothing in *McKnight* that indicated that a plaintiff could not voluntarily pursue an action based on medical malpractice under the Wrongful Death Act including complying with the wrongful death provisions regarding when an action must be filed. We disagree. The *McKnight* court held that the Medical Malpractice Act is "plain and unambiguous in designating that such claims can be for bodily injury or death." *Id.* Moreover, the *Frady* court noted that the conclusion in *McKnight* was harmonious with this court's conclusion in *Sue Yee Lee v. Lafayette Home Hospital, Inc.*, 410 N.E.2d 1319 (Ind.Ct.App.1980), *trans. denied,* in which we held:

> "Viewed from the historical perspective we believe the conclusion is inescapable that our General Assembly intended that all actions the underlying basis of which is alleged medical malpractice are subject to the [medical malpractice] act."

*Frady*, 497 N.E.2d at 622 (citing *Sue Yee Lee*, 410 N.E.2d at 1324). Furthermore, it appears that our supreme court did not disagree with this court's decision in *Frady* since transfer was denied.

Nonetheless, Donald asserts that a more recent supreme court decision, *Miller v. Terre Haute Regional Hospital*, 603 N.E.2d 861 (Ind.1992), has left open the question regarding whether the Medical Malpractice Act trumps the Wrongful Death statute. In *Miller*, the supreme court held that, "an action for death resulting from a health care provider is not exclusively with the ambit of the wrongful death statute. **Such an action is properly brought under the Medical Malpractice Act.**" *Id.* (emphasis added). Thus, Donald argues that the court's use of the term "exclusively" here expressly reserves the possibility that an action for death from medical malpractice may properly be brought under the wrongful death statute within two years of death. Again, we disagree. Despite Donald's debate regarding the court's semantics, it is without a doubt that the supreme court in *Miller* clearly stated that a wrongful death action based on medical malpractice is properly brought under the provisions of the Medical Malpractice Act. *Id.*

Accordingly, relying on the *Frady* decision, we conclude that the medical malpractice statute of limitations governs a wrongful death action based on medical malpractice.

IV. *Whether the doctrines of fraudulent concealment and/or continuing wrong tolled the statute of limitations with regard to Burgeson.*

Donald contends that the trial court improperly granted summary judgment for Burgeson because there exist genuine issues of material fact with regard to whether the doctrine of fraudulent concealment and/or the doctrine of continuing wrong apply to extend the statute of limitations.

## A. Fraudulent Concealment

Where a defendant, by deception or violation of a duty, has concealed material facts from a plaintiff preventing the discovery of a wrong, the defendant is estopped from asserting a statute of limitations defense. *Hughes v. Glaese*, 659 N.E.2d 516, 519 (Ind.1995) (citations omitted). There are two types of fraudulent concealment, active and passive. *Id.* Donald asserts that both the doctrines of constructive fraudulent concealment and active fraudulent concealment apply here. Passive or constructive concealment may be merely negligent and arises when the physician does not disclose to the patient certain material information. *Id.* "The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known, constitutes constructive fraud." *Cyrus v. Nero*, 546 N.E.2d 328, 330 (Ind.Ct.App.1989). Where the concealment is passive, the statute of limitations begins to run at the time the patient-physician relationship ends. *Hughes*, 659 N.E.2d at 519. Active concealment occurs when there is an intention on the part of the physician to mislead the patient. *Id.* When active concealment is involved, the statute does not expire until a reasonable time after the patient discovers the malpractice or with reasonable diligence could have discovered the malpractice. *Id.*

### 1. Passive Fraudulent Concealment

To demonstrate passive fraudulent concealment Donald must show that Burgeson negligently failed to disclose to Patricia certain material information. *See id.* To satisfy this burden, Donald asserts that Burgeson failed to diagnosis Patricia's heart condition although she had examined her thirty-eight times over a nine-year period. As stated, under passive fraudulent concealment, the statute of limitations begins to run when the patient-physician relationship ends. *Id.* Thus, the question becomes when did Patricia's patient-physician relationship with Burgeson end.

Donald asserts that Patricia's patient-physician relationship with Burgeson continued until the date of Patricia's death. Burgeson was Patricia's family physician for nine years prior to her death and treated her thirty-eight times. Patricia last saw Burgeson on January 28, 1994, three months prior to her death. However, Donald contends that two weeks prior to Patricia's death, Burgeson changed Patricia's blood pressure medication and gave her a new prescription. Other than Burgeson, Patricia saw no other physicians during this three month period. Further, Donald testified that Patricia would have continued to treat with Burgeson if she had not died.

Burgeson argues that her patient-physician relationship with Patricia ended on the date of Patricia's last appointment, January 28, 1994. In support of this contention, Burgeson maintains that: "A patient's bare assertion he or she continued to rely upon a physician for medical treatment is insufficient as a matter of law to create a factual issue." *Babcock v. Lafayette Home Hosp., Woman's Clinic*, 587 N.E.2d 1320, 1324 (Ind.Ct.App.1992). Nevertheless, Donald contends that he has presented more evidence than just his bare assertions. We agree. In addition to the parties long standing professional relationship, Burgeson continued to prescribe medication to Patricia after the date of her last appointment. This evidence supports the proposition that both Burgeson and Patricia intended to continue the patient-physician relationship past the time of Patricia's last appointment. *See Frady*, 497 N.E.2d at 623; *see also Carrow v. Streeter*, 410 N.E.2d 1369, 1377 (Ind.Ct.App.1980).

Furthermore, on March 24, 1994, thirteen (13) days after Patricia's death, Burgeson met with Donald to discuss the cause of Patricia's death. In her office notes from this appointment, Burgeson acknowledges that she had reviewed Patricia's autopsy report. If the patient-physician relationship between Patricia and Burgeson ended on the date of Patricia's last appointment, January 28, 1994, as Burgeson contends, we question why Burgeson would have obtained a copy of Patricia's autopsy report. Moreover, if Burgeson was no longer Patricia's physician, it is questionable whether she would have the authority to access this report or discuss it with Donald. These facts demonstrate more than a bare allegation by Donald that the patient-physician relationship between Patricia and Burgeson would have continued and create a question of material fact as to whether the patient-physician relationship continued to the date of Patricia's death.

Specifically, we find that Donald has presented a genuine issue of material fact concerning whether the doctrine of passive fraudulent concealment applies to toll the statute of limitations as to Burgeson until the end of the patient-physician relationship. Additionally, we find that Donald has also presented a genuine issue of material fact with regard to when the patient-physician relationship between Patricia and Burgeson ended.

### 2. *Active Fraudulent Concealment*

■ Donald further maintains that these facts also support a claim of active fraudulent concealment. As mentioned, Donald met with Burgeson on March 24, 1994, to discuss the cause of Patricia's death. During this meeting, Donald claims that Burgeson told him that Patricia's death was inevitable and blamed it on a genetic condition. This appears to be con-

firmed by Burgeson's medical records regarding this meeting, which note:

> Discussion was held with [Patricia's] husband at some length due to her sudden death on 3/12/94 [sic]. Autopsy report showed coarctation of the aorta dissecting ascending aorta with rupture in the pericardial sac and cystic medionecrosis of the aorta. These things were explained to him at length. He was accepting of the inevitably of this problem and will follow through with having the children checked.

(R. 143). Donald contends that by telling him that his wife's death was inevitable, Burgeson either showed ignorance of available treatments or a direct attempt to mislead him about the cause of Patricia's death. To show active fraudulent concealment, Donald must show that Burgeson's actions were "'calculated to mislead and hinder [him] from obtaining information by the use of ordinary diligence, or to prevent inquiry or elude investigation.'" *Hughes,* 659 N.E.2d at 521 (citing *Keesling v. Baker & Daniels,* 571 N.E.2d 562, 565 (Ind.Ct. App.1991)). With regard to this issue, the trial court concluded:

> 9. The plaintiff has failed to present any evidence which would show that Mrs. Hopster's heart problem was not the result of a genetic defect, and that Dr. Burgeson concealed material facts from him or his late wife at any time.
>
> 10. As the plaintiff has not presented any evidence that Dr. Burgeson engaged in fraudulent concealment, the statute of limitations is not tolled.

(R. 296). However, whether Burgeson's statements were true or not is not the sole determinative question here. The key issue is whether Burgeson's statements that Patricia's death was inevitable and caused by a genetic defect were calculated to mislead Donald. If Burgeson intended by these statements to leave Don-

ald with the belief that Patricia's condition could not have been discovered or treated prior to her death, as Donald contends, then Burgeson may have intended to mislead Donald. By telling him that his wife's death was inevitable, there is an inference that Burgeson may have intended to prevent Donald from discovering whether Patricia's condition could have been diagnosed and treated and her alleged malpractice in failing to do so. At a minimum, this evidence creates a question of fact with regard to the issue of active fraudulent concealment.

However, even if Donald demonstrates active fraudulent concealment on the part of Burgeson, he is still required under the case law to file suit within a reasonable time after discovering the malpractice. *Id.* at 519; *Coffer v. Arndt,* 732 N.E.2d 815, 821 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* The Record is unclear as to when Donald actually discovered the malpractice. It apparently was some time after Donald's meeting with Burgeson on March 24, 1994. Nonetheless, the trial court concluded that: "Mrs. Hopster's death was a fact which, in the exercise of reasonable diligence, should have alerted her personal representative to the alleged malpractice of the defendants and Mrs. Hopster's resulting injury." (R. 295). Therefore, assuming that Donald should have discovered the alleged malpractice at the time of his wife's death, Donald was still entitled to a reasonable time thereafter to file suit. *See Coffer,* 732 N.E.2d at 821.

Burgeson argues that Donald failed to file his cause of action within a reasonable period of time. To determine whether Donald filed suit within a reasonable period of time, we must first decide when the statute of limitations began to run. Under passive fraudulent concealment, the statute of limitations begins to run at the time the patient-physician relationship ends.

*Hughes,* 659 N.E.2d at 519. If the patient-physician relationship ended at the time of Patricia's death, then Donald timely filed his Proposed Complaint. Because we have already found there to be a question of material fact with regard to when the patient-physician relationship ended, the finder of fact must first answer this question, before determining whether suit was timely filed under the doctrine of passive fraudulent concealment.

Under active fraudulent concealment, the statute of limitations begins to run at the time the alleged malpractice is discovered or reasonably could have been discovered. *Id.* Thus, the finder of fact must first determine when Donald discovered the alleged malpractice by Burgeson. If it was or should have been discovered at the time of Patricia's death, as the trial court concluded, and the patient-physician relationship ended on the date of Patricia's death, then Donald's proposed complaint was timely filed. If however, the finder of fact determines that the patient-physician relationship ended on the date of Patricia's last appointment, January 28, 1994, the question becomes whether it was reasonable for Donald to file suit less than two months after the occurrence based statute of limitations expired. Donald filed suit on March 11, 1996, and if the patient-physician relationship ended on January 28, 1994, then under this scenario the occurrence based statute of limitations expired on January 28, 1996.

We are cognizant of the case law relied on by Burgeson, such case law has found delays in filing suit of varying lengths to be unreasonable under the doctrine of fraudulent concealment. *Boggs,* 730 N.E.2d at 699 (filing suit 22½ months after discovery of malpractice unreasonable); *Coffer,* 732 N.E.2d at 822 (24 months); *Yarnell,* 572 N.E.2d 1312 (24 months); *Cyrus v. Nero,* 546 N.E.2d 328, 331 (Ind.Ct.

App.1989) (22 months); *Spoljaric v. Pangan,* 466 N.E.2d 37, 45 (Ind.Ct.App.1984) (23 months).

However, as we have mentioned, the question of whether Donald filed suit within a reasonable amount of time cannot be decided before a determination of the factual issues concerning when the patient-physician relationship ended and when Donald discovered the alleged malpractice are resolved. Moreover, the cases relied on by Burgeson with regard to this issue are distinguishable from the case before us.

Assuming that the patient-physician relationship ended on January 28, 1994, and Donald discovered the alleged malpractice on March 11, 1994, the date of Patricia's death, we believe that there is a question of fact as to whether Donald filed suit within a reasonable time. Under these circumstances, the occurrence based statute of limitations would have expired on January 28, 1996. Donald filed suit just 43 days after the occurrence based statute of limitations expired. Without applying the doctrine of fraudulent concealment, at a minimum, Donald is entitled to the two years provided by the occurrence based statute of limitations. *See* I.C. § 34–18–7–1(b). The doctrine of fraudulent concealment is an equitable doctrine which provides an equitable defense operating to estop a defendant from asserting a statute of limitations defense. *Yarnell,* 572 N.E.2d 1312; *Spoljaric,* 466 N.E.2d at 43. If the doctrine is to be equitable where fraudulent concealment has occurred, it must allow the filing of a claim beyond the basic allowance in the statute of limitation of two years **from the date of occurrence** of the alleged malpractice.

We acknowledged that the case law has clearly held that this doctrine does not provide an additional two years **after the date of discovery** of the alleged malprac-

tice, but instead requires that a claim be filed within a reasonable period of time after discovery. *Yarnell,* 572 N.E.2d at 1314 (citation omitted); *Cyrus,* 546 N.E.2d at 330. Further, as stated, delays in filing after discovery of the alleged malpractice of less than two years have been found to be unreasonable. *Boggs,* 730 N.E.2d at 699; *Coffer,* 732 N.E.2d at 822; *Yarnell,* 572 N.E.2d 1312; *Cyrus,* 546 N.E.2d at 331; *Spoljaric,* 466 N.E.2d at 45.

Nonetheless, what is important to note about many of these cases is that they were filed well beyond the expiration of the occurrence based statute of limitations. In *Cyrus,* the claim was filed 4 years and 2 months after the alleged malpractice occurred, which was 26 months after the occurrence based statute of limitations expired and 22 months after the plaintiff discovered the alleged malpractice. *Id.* at 329, 330. In *Boggs,* suit was filed 3 years after the alleged occurrence of the malpractice, which was 22½ months after discovery and 1 year after the statute of limitations expired. *Id.* at 694. Again, in *Spoljaric,* the lawsuit was filed 2 years, 8 months after the occurrence of the alleged malpractice, 23 months after discovery and 8 months after the occurrence based statute of limitations expired. *Id.* at 39. Likewise in *Yarnell,* suit was filed 2 years 5 months after the alleged malpractice occurred, which was 2 years, 8 days after discovery and 5 months after the occurrence based statute of limitations expired. *Id.* at 1313. However, in *Coffer,* the action was filed 26–27 months after the alleged malpractice occurred (the court indicated that the patient-physician relationship ended in either September or October 1995, and the proposed complaint was filed in December, 1997), which was 24 months after discovery of the alleged malpractice, and 2–3 months after the occurrence based

statute of limitations expired. *Id.* at 818, 822.

In all of these cases, other than *Coffer*, the action was commenced several months to years after the occurrence based statute of limitations expired. Here, it is undetermined when Donald discovered this alleged malpractice, but assuming for this discussion that Donald discovered or should have discovered the alleged malpractice on the date of his wife's death, March 11, 1994, then his complaint was filed 24 months after discovery. Again assuming for this discussion that the patient-physician relationship between Patricia and Burgeson ended on January 28, 1994, the date of her last appointment, Donald's cause of action was filed 2 years, 43 days after the alleged malpractice occurred; thus, just 43 days after the occurrence based statute of limitations expired. This time period is much shorter than the time periods at issue in the previously discussed cases.

Furthermore, we know that a reasonable time to file suit after discovery of the alleged malpractice cannot take place before the expiration of the occurrence based statute of limitations, since a plaintiff is guaranteed at a minimum two years from the occurrence of the alleged malpractice under the medical malpractice statute of limitations regardless of whether the doctrine of fraudulent concealment is applicable. If this was not the case, the application of the doctrine of fraudulent concealment could in some instances penalize a plaintiff by providing less time to file suit than the occurrence based statute of limitations allows. This would certainly not be an equitable result. The idea of an equitable doctrine is to provide a more equitable result. *Spoljaric*, 466 N.E.2d at 46 ("the essence of an equitable defense is that it provide what equity requires"). An interpretation that would allow less time

than the occurrence based statute of limitation allows strains this concept.

Thus, the question becomes what is reasonable in addition to what is allowed by the occurrence based statute of limitations. In *Coffer*, this court found that filing suit 24 months after discovery, which was 2–3 months after the occurrence based statute of limitations expired, was unreasonable as a matter of law. *Id.* at 822. We are not so certain here. Therefore, under the facts of this case, we cannot find that filing this action 43 days after the occurrence based statute of limitations expired, and up to 24 months after discovery of the alleged malpractice, was unreasonable as a matter of law. We conclude that this is a question of fact. Accordingly, we find that there are genuine issues of material fact concerning whether Donald filed suit within a reasonable period of time after discovering Burgeson's alleged malpractice and as to when he discovered the alleged malpractice.

Consequently, we conclude that Donald has presented issues of material fact with regard to active and passive fraudulent concealment, making the trial court's Order granting summary judgment in favor of Burgeson improper.

### B. *Doctrine of Continuing Wrong*

Finally, Donald claims that there are questions of fact concerning the doctrine of continuing wrong. The doctrine of continuing wrong is applicable when an entire course of conduct combines to produce an injury. *Cyrus*, 546 N.E.2d at 331. When this doctrine attaches, the statute of limitations does not begin to run until the wrongful act ceases. *Havens v. Ritchey*, 582 N.E.2d 792, 795 (Ind.1991). "The doctrine of continuing wrong is not an equitable doctrine; rather, it defines when an act, omission, or neglect took place." *Coffer*, 732 N.E.2d at 821. Donald contends that Burgeson's wrongful act of

failing to diagnose Patricia was a continuing wrong. Our supreme court has held that: "when the sole claim of medical malpractice is a failure to diagnose, the omission cannot as a matter of law extend beyond the time the physician last rendered a diagnosis." *Havens*, 582 N.E.2d at 795.

Therefore, even though with regard to the doctrine of fraudulent concealment, the patient-physician relationship between Patricia and Burgeson may not have ended on the date of Patricia's last appointment, January 28, 1994, under *Havens*, the date of this last appointment is the last date Burgeson had an opportunity to diagnose Patricia. Thus, since this date was more than two years prior to the filing of Donald's Complaint, the application of the doctrine of continuing wrong here does not extend the statute of limitations in this case.

### CONCLUSION

Consequently, we conclude that the trial court properly granted summary judgment in favor of the Defendants Appellees, Gootee, McClure, Watts, and DeWitt. However, we find that the trial court erred in granting summary judgment in favor of Defendant–Appellee, Burgeson. Therefore, we reverse the trial court's decision as to Burgeson and remand this case for proceedings consistent herewith.

Affirmed in part, reversed and remanded in part.

ROBB, J., and DARDEN, J., concur.