**Ollie Eugene GILLIE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 985 S 385.

Supreme Court of Indiana.

Aug. 21, 1987.

Howard B. Lytton Jr., Steven E. Ripstra,
Lytton and Ripstra, Jasper, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Ollie Eugene Gillie was accused of stealing a car in Fort Wayne and robbing a bank in Pike County. He was tried and convicted of theft, a class D felony, Ind.Code § 35–43–4–2 (Burns 1985 Repl.); robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.); and confinement, a class B felony, Ind.Code § 35–42–3–3 (Burns 1980 Supp.).

On direct appeal, this Court affirmed Gillie's conviction for theft but reversed his convictions for armed robbery and confinement. *Gillie v. State* (1984), Ind., 465 N.E.2d 1380. Gillie was retried on the two charges and convicted again.

In this second direct appeal, Gillie raises five issues:

1) Whether the trial court erred on remand when it allowed the State to refile its robbery and confinement charges to allege the use of a deadly weapon;

2) Whether the trial court erred by admitting testimony regarding the victim's identification of the defendant during a lineup;

3) Whether convictions for both robbery and confinement constituted double jeopardy;

4) Whether the testimony of a witness given at Gillie's original trial was properly admitted at his subsequent trial; and

5) Whether the State adequately established venue.

Gillie stole a Ford Pinto from a car dealership in Fort Wayne, and drove it to Pike County, where several of his relatives lived. A resident saw Gillie asleep in the Pinto at a wooded site about one mile from the bank on the morning of August 14, 1980. Gillie identified himself and indicated that he was picking berries for his mother although the berry season was over.

Later that same day, the Campbelltown Branch of the First National Bank of Winslow was robbed of about $14,000. The robber wore a ski mask and carried a gun. He ordered one branch employee, Kathryn Harker, to lock the bank door. He told the other employee, JoAnn Radcliff, to enter the vault and place money in a sack. The robber demanded that both women lie on the floor of the vault and remain there, then escaped.

Minutes later, the women contacted the police, who immediately began searching the area. The stolen Pinto was discovered at the wooded site where he had been seen earlier, and a ski mask was found near an abandoned house in a field behind the bank. The hat contained hair which matched Gillie's hair. Police also discovered that Gillie, using the name Gene O. Young, had purchased another car with about $1500 in cash shortly after the bank robbery. Gillie left the state in the new car and eluded police until his arrest in Texas several months later. The victims identified Gillie as the robber after his return to Indiana.

## I. Information

On January 15, 1981, the State filed informations charging Gillie with robbery and confinement. The informations purported to charge the crimes as class B felonies. However, because they omitted any reference to use of a deadly weapon, the informations actually charged only class C felonies. Gillie moved to dismiss the informations before his initial trial. The State amended the charges of robbery and confinement to allege the use of a deadly weapon, thereby upgrading both charges to class B felonies. This Court's reversal of these two convictions was based on a determination that the trial court's approval of the amendments was improper under Ind.Code · § 35–3.1–1–5(e) (Burns 1979 Repl.), which provided at the time:

Notwithstanding any other provision in this section, an indictment or information shall not be amended in any respect which changes the theory or theories of the prosecution as originally stated, or changes the identity of the offense charged; nor may an indictment or infor-

mation be amended after arraignment for the purpose of curing a failure to charge or state an offense or legal insufficiency of the factual allegations.

That statute was repealed after Gillie's first trial but before the case was remanded on July 9, 1984, for the second trial. 1981 Ind.Acts, P.L. 298, § 9(a). It was replaced by Ind.Code § 35–34–1–5(b)(1), which provided:

> (b) The indictment or information may be amended in matters of substance or form, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to:
>
> (1) thirty (30) days if the defendant is charged with a felony; or
>
> (2) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors; before the omnibus date. When the information or indictment is amended, it shall be signed by the prosecuting attorney.

On August 31, 1984, the State filed two informations, again charging Gillie with robbery and confinement as class B felonies. The defense objected, arguing that the new informations were merely amendments of the previous charges and that this Court already had determined on direct appeal that such amendments were improper. The State contended that the informations filed on August 31 were not amendments but merely the first charges filed to initiate a new legal proceeding. The trial court allowed the State's new informations to stand and dismissed the original informations.

Gillie argues that an appellate reversal and remand restores the parties to the position that they held before the erroneous ruling, citing *Welsh v. Sells* (1963), 244 Ind. 423, 192 N.E.2d 753, and *Brown v. State,* (1983), Ind.App., 458 N.E.2d 245. He maintains that the original informations in this case, charging confinement and robbery as class C felonies, were still in effect after remand and that the trial court was bound by Ind.Code § 35–3.1–1–5(e) to bar amendment of the charges to class B felonies.

■ Notwithstanding *Brown,* the prevailing rule in our criminal cases is that an appellate reversal and remand nullify the original trial and place the parties in the position that they would have occupied if no proceedings on the charges had ever occurred. *See, Layton v. State* (1968), 251 Ind. 205, 240 N.E.2d 489; *Cichos v. State* (1965), 246 Ind. 680, 208 N.E.2d 685, *rehearing denied,* (1946), 246 Ind. 680, 210 N.E.2d 363, *writ dismissed* 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175; *Hefton v. State* (1934), 206 Ind. 663, 190 N.E. 847; *State v. Balsley* (1902), 159 Ind. 395, 65 N.E. 185; *Ex Parte Bradley* (1874), 48 Ind. 548. The trial court followed that rule upon remand by, among other things, arraigning Gillie and conducting a bond hearing, proceedings which had been undertaken before the error occurred in his original trial. Indeed, with the exception of the dismissal of the first information, the second trial proceeded as if the first had not occurred. The informations filed after remand were not amendments, but, as the State suggests, the initial charges of a new proceeding and thus not affected by either Ind.Code § 35–3.1–1–5(e) or Ind.Code § 35–34–1–5(b)(1).

Such a ruling is supported by logic, as well as law. The intent of both Ind.Code § 35–3.1–1–5(e) and Ind.Code § 35–34–1–5(b)(1) is to prevent the State from amending the charging information at a point in the proceedings when the accused would be unduly prejudiced in preparing an adequate defense; thus, the essence of both statutes is notice to the defendant. Originally, the legislature concluded that any amendment which changed the theory of the prosecution would be prejudicial to the defendant, no matter when that amendment occurred. This Court granted a new trial to Gillie when the State violated that legislative determination. In the meantime, the legislature had decided that such a rule was unnecessary and changed the law to allow amendment of the information in felony cases until 30 days before the omnibus date.

The document which initiated that second proceeding was the information charging robbery and confinement as class B felonies. Thus, from the start of that second

proceeding, Gillie was aware that he would be defending against those specific charges. The purpose of the notice statutes was fulfilled.

## II.  Identification

■ After his return to Indiana, Gillie participated in a lineup at which the two bank employees identified him. All of the lineup participants wore ski masks and were asked to repeat from a typed script the statements made by the bank robber. The victims testified at both trials that they identified Gillie as the robber simply from his voice and distinctive cough.[1]

In his first direct appeal, Gillie challenged the admission of the identification evidence. He claimed that the identifications were tainted by an unduly suggestive and invalid pre-trial lineup procedure. This Court, in addressing that issue, found no error.

The same identification evidence was introduced over the same objections in the second trial. In this appeal, Gillie again challenges the admission of the identification evidence and further claims that without such evidence, the evidence was insufficient for conviction. The law of the case is that the lineup by which Gillie was identified was not unduly suggestive.

## III.  Double Jeopardy

■ Gillie claims that confinement constituted a lesser included offense of robbery in his case and thus sentencing on both charges was improper. In *Brim v. State*, (1984), Ind., 471 N.E.2d 676, 677, Justice Givan addressed a similar claim with respect to the robbery of a convenience store and noted that "the test to be applied to determine whether there are distinct offenses is whether each offense requires proof of at least one element which the other offense does not." The evidence in *Brim* was that the defendant forced an employee of Village Pantry at gunpoint to move from behind a counter, lie on the floor, help open the cash drawer and then reassume a prone position. This Court deemed such evidence sufficient to sustain a finding of guilty on "the separate and distinct offense of confinement." 471 N.E.2d at 677.

The bank employees in this case testified that Gillie told one to lock the door and ordered the other into the vault to fill his bag with cash. After obtaining the $14,-000, Gillie ordered both women to lie on the floor of the vault before he closed the vault door. This testimony was very similar to that received in *Brim*. We find unpersuasive Gillie's claim of double jeopardy with regard to his dual convictions for robbery and confinement.

## IV.  Prior Testimony of Absent Witness

Gillie's half-brother, Roger Cox, testified at the first trial. The State had difficulty locating Cox to testify at the second trial. Hearing that the prosecutor was looking for him, Cox telephoned from Texas shortly before trial and agreed to travel to Pike County to testify. However, Cox called back a few days before trial to say that he would not be coming because he could not afford the trip.

■ When the defense objected at the second trial to the State's proffer of Cox's previous testimony, the State claimed the testimony was admissible because Cox was unavailable. The trial court agreed and admitted the testimony. Gillie now claims that ruling violated his right to confront witnesses under the Sixth Amendment because the showing of Cox's unavailability was insufficient.

■ The testimony of the absent witness clearly is hearsay. However, the Sixth Amendment does not bar all such hearsay. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The prior courtroom testimony of an absent witness is admissible under the Sixth Amendment if that witness is shown to be unavailable and the testimony shows adequate indicia of reliability. To satisfy the unavailability requirement, the prosecution must have made a "good faith effort" to secure the witness's presence at the proceeding. *Bar-*

---

1. Gillie suffers from chronic respiratory ailments, including emphysema.

*ber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). In *Barber,* the United States Supreme Court reversed the trial court for admitting the prior testimony of an accomplice lodged in a federal prison 225 miles away. The prosecution had not made any effort to produce the witness. The Court rejected the government's argument that simple absence of a witness from the jurisdiction was sufficient evidence of unavailability.

In *Ohio v. Roberts,* the Supreme Court agreed that the State had met its burden of proving the unavailability of an absent witness. The State began searching for the witness four months before trial. The witness' family told the prosecutors that the witness was traveling out of state and they did not know how to reach the witness, even in an emergency. The family also related its own unsuccessful efforts to reach the witness for more than a year. The prosecution issued subpoenas to the witness at her parents' home on five occasions. The Court reasoned:

> The law does not require the doing of a futile act. Thus, if no possibility of procuring the witness exists (as, for example, the witness' intervening death), "good faith" demands nothing of the prosecution. But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation. "The lengths to which the prosecution must go to produce a witness ... is a question of reasonableness." *California v. Green,* 399 U.S. [149], at 189, n. 22 [90 S.Ct. 1930, 1951, n. 22, 26 L.Ed.2d 489 (1970) ] (concurring opinion, citing *Barber v. Page, supra* ). The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness.

448 U.S. at 74, 100 S.Ct. at 2543.

The State's efforts to obtain Roger Cox's presence did not provide a solid foundation for a finding of unavailability. The State apparently subpoenaed Cox twice—once at his former Indiana address and once at his Texas home. When Cox initially contacted the prosecutor's office, he said he could not afford to travel to Pike County. The prosecutor assured Cox that he would be reimbursed once he arrived, and only then did Cox agree to testify. The record does not disclosed any action by the prosecutor after Cox called back the next week to say that he simply could not afford the trip. At the least, the prosecutor could have sought a continuance to enforce the subpoena or make further travel arrangements for Cox. The availability of such options presented more than a "mere possibility" that the witness's appearance could be obtained.

■ A violation of the confrontation right may constitute harmless error. *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Romey v. Glass* (1950), 120 Ind.App. 279, 91 N.E.2d 850. Reversal is not required for a confrontation violation where the evidence is so convincing that, absent the improperly admitted testimony, the jury could not have properly reached a different conclusion. *Brewster v. State* (1983), Ind., 450 N.E.2d 507.

Considering the wealth of evidence against Gillie, including the identification of him by the bank employees, Cox's testimony was relatively unimportant. Cox testified that the hat allegedly worn by the robber had come from Cox's car and that Gillie had left Pike County destined for Fort Wayne two days before the robbery. Cox also stated that Gillie was unemployed and had borrowed money from family members immediately before the bank robbery. And according to Cox, Gillie had telephoned from Texas shortly before his apprehension and said that he would surrender to police after he had saved enough money to hire an attorney. It is inconceivable that the jury would have come to a different result absent Cox's testimony. Consequently, the trial court's error in admitting the testimony was harmless.

### V. *Venue*

■ Gillie claims that the evidence of venue, including testimony that the bank robbery occurred across the street from Pike Central High School, was insufficient.

The State has the burden of proving venue by a preponderance of the evidence; circumstantial evidence of venue may be sufficient. The State's burden is met if the facts and circumstances of the case permit the jury to infer that the crime occurred in a given county. *Campbell v. State* (1986), Ind., 500 N.E.2d 174.

Aside from the evidence indicating that the bank neighbored Pike Central High School, the State produced testimony that the victim of the robbery was the Campbelltown branch of the First National Bank of Winslow. Both Campbelltown and Winslow are in Pike County. One of the bank employees testified that the bank was located at "the Highway of 56 and 61," apparently referring to the intersection of State Roads 56 and 61. The investigating officers named numerous Pike County roads and streets when discussing their search of the bank surrounds. This evidence was clearly sufficient to establish venue.

The judgment of the trial court is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.