Lennard COLEMAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 79S00–8702–CR–267.

Supreme Court of Indiana.

Nov. 29, 1989.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jane A. Morrison, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of appellant of the crime of Attempted Rape, for which he received a sentence of twelve (12) years.

The facts are: On the day of April 30 and continuing into the early morning hours of May 1, 1986, several people attended a party at the apartment of John Walker in Lafayette, Indiana. During the party, alcoholic beverages were consumed. The victim in this case testified that she consumed several wine coolers but did not become intoxicated.

During the course of the party, several persons entered the bedroom of Mary Scott to play a Pac–Man video game. Due to the limited size of the bedroom, the parties playing the machine sat on the bed. The victim in this case was among those playing the Pac–Man game. At approximately 1:00 a.m., the victim found herself alone in the bedroom with appellant. When the others had left the room, appellant closed and locked the door, which he could reach from his seated position on the bed.

The victim stated that he then began placing his hands all over her body, that he pushed her tank top up around her neck and fondled her breasts, that he also ran his hands down inside her pants, that he rubbed her pubic area, and that he inserted his fingers into her vagina. She stated that during this entire attack she was attempting to fight him off, was trying to restrain his hands, and was screaming for help. She testified that as she was screaming appellant grabbed her by the throat and placed one hand over her mouth and nose. Later examination disclosed that she was bruised about the neck from the choking.

Mary Scott heard the victim screaming and went to the bedroom door but found it locked. However, she knew the door could be "popped" open with a screwdriver. She obtained a screwdriver and opened the door. When she entered, appellant was on

top of the victim, was holding her down on the bed, and was holding her arms. As soon as Scott entered the room, appellant jumped up and left. The victim, who was in an hysterical state, was taken to another room. Appellant entered and tried to apologize to the victim. However, she started screaming, and he left.

In the meantime, police had been called. When they arrived on the scene, witnesses pointed out appellant, and he was taken into custody. His original arrest was for public intoxication. After arriving at the police station, although he was obviously intoxicated, he was questioned by police and gave a statement which was reduced to writing. However, in his statement he denied attacking the victim.

Appellant claims the trial court violated his right to confront witnesses by permitting the admission of a deposition taken by the State of the complaining witness. Following the episode leading to this prosecution but prior to trial, the victim, on a voluntary basis, entered River Wood Center in Prescott, Wisconsin for treatment of her drug dependency. The admission was for a 21-day period which ran beyond the trial date for this case.

The State petitioned to take the deposition of the victim, which petition was granted. Defense counsel petitioned for public funds to furnish air transportation to Prescott, Wisconsin and the incidental expenses he would incur in attending the deposition. This too was allowed by the trial court, and counsel for defense in fact did attend the taking of the deposition. At that time, there was no mention made of appellant attending the deposition, although he was free on bond at the time. There is no showing in this record that he did not have the ability to get to Wisconsin if he wished to attend the deposition.

At the opening of the deposition, the prosecuting attorney stated, "We're going to start by saying that this is a deposition taken at my request at a time and place agreed to by the parties." The presence of appellant's counsel was noted and there was no objection to proceeding in appel-

lant's absence. The deposition disclosed the facts as above recited.

Appellant now contends there is no showing that the victim could not have been produced to testify directly at the trial. To the contrary, the entire proceeding was commenced on just such a representation to the trial court, who so found. Appellant also takes the position that there is no showing that there was any need for the victim to be at the clinic for treatment, and appellant hypothesizes that the victim's parents placed her there merely to keep her from testifying. There is absolutely no evidence in this record, however, to support such a presumption.

At the beginning of the deposition, the victim testified that she had been there less than two weeks and that her date of discharge was August 21. The date of the deposition was August 7. The date of trial was August 12. The verdict of the jury was August 14. The victim also testified that she knew that River Wood Center was for the treatment of chemically dependent people and alcoholics and stated that she was there because of "drug problems."

To support his theory that the victim's stay at the clinic was merely a pretext to avoid testifying at trial, he points to cross-examination during the deposition in which the victim was reluctant to say that she had a "problem" with drugs. In reading the entire deposition, it becomes apparent that the victim wanted to say that while she did not believe she had a drug problem, her parents did, and thus she was committed.

We see no justification for appellant's claim that the victim's admission into the treatment program was merely a pretext. In order for a deposition to be used in lieu of in-court testimony, its proponent must show that the witness is unavailable, and the testimony must show adequate indicia of reliability. *Gillie v. State* (1987), Ind., 512 N.E.2d 145. Lack of the victim's availability was clearly established both in the trial court at the time of the motion to take the deposition and at the outset of the deposition itself. There is nothing in either the deposition or the trial record which

would call into question the reliability of the deposition.

Appellant cites the case of *Coy v. Iowa* (1988), 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 for the proposition that a defendant must not be deprived of his right to face a witness. In the *Coy* case, a screen had been placed to shield the witness from the view of the defendant. Justice Scalia, writing for the Supreme Court, found that this violated the confrontation clause of the Sixth Amendment. However, in the *Coy* case, the witness was in court and readily available, and the issue was whether she could be shielded from the view of the accused over his objection.

We have an entirely different situation in the case at bar. The trial court had evidence before it to justify a ruling that the witness would be unavailable for trial and that her evidence should be presented by deposition. Consequently, he so ruled. Appellant's counsel made no objection and asked the court for an order to pay his expenses to attend the deposition. However, no mention was made of appellant attending such deposition. In fact, appellant was out on bond at the time and presumably could have attended had he so desired.

■ Appellant takes the position in his brief that he was deprived of his right to attend. There is nothing in this record to justify such a conclusion. Appellant also argues that by failing to object, his trial counsel was ineffective. However, under the circumstances it might well be that counsel felt appellant was better off having the victim's testimony submitted by deposition rather than by her live testimony in the courtroom. Moreover, it is obvious that, at that juncture, in order to obtain her presence in the courtroom he would have had to obtain a continuance; yet he might have felt that tactically, he would be better off to go to trial at that time. An appellate court will not second-guess an attorney on tactical decisions. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

We would point out further that even if the testimony of the victim is not considered, we still have the testimony of Mary Scott who "popped" open the locked bedroom door to find appellant on top of a screaming, struggling victim. Scott's testimony alone is enough to support the verdict of the jury. We see no reversible error in the taking or use of the victim's deposition.

■ Appellant contends the trial court erred in admitting the statement he gave immediately after he was arrested. He claims that he was too intoxicated to. freely and knowingly give his consent to the taking of such a statement. There is no question from the evidence in this record that appellant was intoxicated at the time he gave his statement. However, intoxication alone is not enough to demonstrate inability to form intent or give consent. It is only one factor which may be considered in determining the subject's ability to give a statement which is voluntary. *Burdine v. State* (1987), Ind., 515 N.E.2d 1085.

■ An examination of appellant's statement gives every indication that he was intoxicated but not so intoxicated that he was unable to respond to such questions as his name, his social security number, his home address, and so forth. It also is abundantly clear that he understood why he was in the police station and what he was accused of doing. The irony of appellant's argument that he was so intoxicated that he did not know what he was doing is that he was not so intoxicated as to admit any guilt. He skillfully parried every question asked of him by the police officers in attendance. Never once did he waver from his steadfast denial of any molestation of the victim.

■ Even if we would assume for the sake of argument that he was too intoxicated to give a voluntary, admissible statement, there was no harm from the admission of his statement in evidence because it is entirely exculpatory.

Appellant claims the evidence is insufficient to support the verdict of the jury. He claims the testimony of the victim was inherently incredible and unworthy of belief. He bases this argument upon the victim's

statement that she had consumed several wine coolers on the day of the party and upon the fact that she was at one point in time the only woman in the bedroom with several men.

He also claims her testimony is incredible because she drew the conclusion that appellant wanted to rape her from the fact that he placed his hands under her clothes on her breasts and in her private area. We cannot join appellant in his claim that such a conclusion on the part of the victim is unwarranted.

■ Appellant contends that because there is no evidence that he removed her clothing or his own, no inference can be drawn that he intended to rape the victim. However, we have held that a person's intent may be determined from their conduct and the natural consequences thereof and that the intent may be inferred from circumstantial evidence. *Stout v. State* (1988), Ind., 528 N.E.2d 476. It is not required that a defendant make a direct statement of intent to rape nor is it necessary that clothing be removed in order to express such intent. *See Underwood v. State* (1987), Ind., 515 N.E.2d 503; *Neice v. State* (1981), Ind., 421 N.E.2d 1109.

■ The question of the victim's credibility, based upon how many drinks she had consumed and her resultant capability of discerning the situation, was a matter of fact for the determination of the jury. This Court will not usurp their prerogative. *Williams v. State* (1988), Ind., 520 N.E.2d 1261. When one considers the testimony of the victim and of Mary Scott, there is ample evidence in this record to support the verdict.

Appellant contends the trial court erred in admitting a statement made by Mary Scott to John Walker, the host of the party where the offense occurred. Over objection, Walker was permitted to testify that Mary Scott had told him that the victim was in the bedroom crying, and that Scott had told him what she found when she "popped" the door open. The State offered the utterance by Scott as an excited utterance, whereupon the trial court overruled the objection and permitted the testimony.

■ We see no error in the trial court so doing. *Walker v. State* (1976), 265 Ind. 8, 349 N.E.2d 161, *cert. denied*, 429 U.S. 943, 97 S.Ct. 363, 50 L.Ed.2d 313. We further would point out that Mary Scott's statement was admissible for a separate reason in that it was not offered for the truth of the statement but to show why Walker took the action described in his testimony. *Bray v. State* (1982), Ind., 430 N.E.2d 1162.

■ Appellant claims the trial court erred in admitting the statement given by the complaining witness at police headquarters on the date of the alleged crime. Although the statement was not necessary, and technically, probably should not have been admitted in evidence, an examination of that statement and the deposition taken of the victim discloses that except for a few minor discrepancies they are essentially the same.

Thus the admission of the statement taken at the police station was merely cumulative of evidence properly admitted and thus was not reversible error. *Seay v. State* (1988), Ind., 529 N.E.2d 106. We would further point out that this issue is not included in appellant's motion to correct error and thus would be deemed waived. *Eveler v. State* (1988), Ind., 524 N.E.2d 9.

■ Appellant contends the trial court erred in permitting the State to introduce a "mug shot" of appellant in evidence. It is true that ordinarily, mug shots are not admissible in evidence. However, the reason for their inadmissibility is that they tend to reveal to the jury that the accused has a criminal record.

In the case at bar, the "mug shot" did not disclose any prior criminal activity on the part of appellant. It was, in fact, a picture taken at the time of his arrest on the instant charge and was placed in evidence by the State as part of its case that appellant was not so intoxicated at the time as to render his statement inadmissible. A jury naturally would presume that appellant was arrested on the instant charge. Thus there is no jeopardy in showing a photograph of appellant taken at that time.

*See Kelly v. State* (1984), Ind., 460 N.E.2d 137. We see no error in the admission of the "mug shot."

 Appellant claims the trial court erred in giving State's Instruction No. 4 for the reason that the instruction misled the jury. The State's Instruction No. 4 merely informed the jury of the included offense of confinement in the instant case. Appellant correctly argues that confinement is not automatically an included offense in the crime of attempted rape. Nevertheless, the trial judge was correct in his observation that evidence had been submitted by the State which the jury might find to constitute unlawful confinement of the victim. Even so, confinement was not charged here, thus was not properly included in the instructions. However, appellant was not convicted of confinement; thus any error in giving the instruction was harmless.

 Appellant also challenges State's Instruction No. 8, which described both confinement and battery as lesser-included offenses in the instant charge. Battery is, in fact, a lesser-included offense in any prosecution for attempted rape. *Salahuddin v. State* (1986), Ind., 492 N.E.2d 292. Because both confinement and battery were included offenses under the evidence in this case, the trial court did not err in giving the instructions. We would further point out that because appellant was not convicted of either included offense, but was convicted of the major offense of attempted rape, there was no prejudice to appellant in the giving of the instructions. We can find no reversible error absent a showing of prejudice. *Martin v. State* (1983), Ind., 453 N.E.2d 1001.

Appellant contends his trial counsel's representation was ineffective. He claims, moreover, that because trial counsel participated in the drafting of the motion to correct error, he foreclosed a full range of inquiry into his representation. Such a claim has no merit. When appellate counsel took over, they could have amended the motion to correct error, and if the time had expired, they could have filed a petition to file a belated motion to correct error. This

was not done. Nevertheless, because of appellant's claim of ineffective counsel, we have examined the record in this case and now find that claim to be untenable.

On the day of trial, appellant expressed displeasure with his trial counsel, who then moved to withdraw his appearance. The trial court informed appellant that if he wished to employ private counsel he might do so; the court indicated, however, that the trial would proceed as scheduled. Such was the prerogative of the trial court. *Flowers v. State* (1988), Ind., 528 N.E.2d 57. We see nothing in this episode which would indicate in any way that trial counsel was ineffective in his representation.

Appellant also contends his trial counsel was ineffective because he did not object to the use of the victim's deposition at trial. We repeat our previous statement in this opinion that it is within the parameters of proper representation for trial counsel to determine that his client would fare better if the victim's testimony was submitted by deposition rather than if she appeared in person. We cannot say that counsel's choice in this matter demonstrates ineffective representation.

Appellant claims his counsel was ineffective when he failed to move for a continuance to investigate the testimony of State's witness Mary Scott. Appellant does not tell us why this should have been regarded as ineffective representation nor do we find anything in the record to indicate that trial counsel in any way was unprepared to cross-examine Mary Scott.

Appellant claims counsel was ineffective in his failure to object to Instructions Nos. 4 and 8. We have dealt with those instructions previously in this opinion and find that they were properly given; thus they cannot support a charge of ineffective assistance of counsel.

Appellant contends counsel was ineffective in that he failed to file a motion to continue the trial. Here again, we have a matter of choice of tactics directly related to the availability of the prosecuting witness. We repeat that counsel's tactical choice might well have been that appellant

would fare better if the trial took place at a time when the prosecuting witness was not available for a direct appearance.

Appellant claims his counsel was ineffective in his failure to call Amos Mitchell as a witness. Appellant contends that Mitchell's testimony would have corroborated his testimony. However, in his deposition, Mitchell testified that he was outside during most of the evening and that he went inside the apartment only after the police had arrived. Given this statement by Mitchell, we hardly can imagine why trial counsel would have called him as a witness.

■ Appellant claims his counsel was ineffective in that he failed to object to certain prosecutorial comments during *voir dire*. This issue was not presented in the motion to correct error and as above pointed out, if appellant's counsel intended it to be raised, the procedure was available to do so. The fact that it is not included in the motion to correct error waives the issue. *Eveler, supra.*

Appellant contends his counsel was ineffective because he failed to move for a mistrial due to alleged juror intimidation. One of the jurors had stated that a car occupied by appellant's associates drove past her home several times one evening. The trial court questioned the juror extensively and determined that the incident would not influence her vote. Here again, this issue is not included in the motion to correct error and thus is waived. *Id.*

The same waiver applies to appellant's claim that his counsel was ineffective in that he failed to object to certain prosecutorial comments made during the closing and rebuttal arguments. Moreover, this Court has held previously that whether to raise objections to opposing counsel's opening or closing argument is a matter of trial strategy. *Daniels v. State* (1988), Ind., 528 N.E.2d 775.

We find no evidence in this case which would justify holding that trial counsel failed to meet the standards for effective counsel set forth in *Strickland, supra.*

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

In this case, the court, over objection of appellant, permitted the prosecution to present the testimony of the complaining witness by a video tape deposition, which was taken at a hospital in Prescott, Wisconsin with defense counsel present, but not appellant.

The Sixth Amendment bars the state in a criminal prosecution from using prior recorded testimony or depositions of an absent witness unless the state, as sponsor of the witness, supplies a required predicate. *Gillie v. State* (1987), Ind., 512 N.E.2d 145. That predicate exists where the prosecution shows the unavailability of the witness and the prior testimony shows adequate indicia of reliability. The unavailability prong of the predicate is not present in this case, and the Sixth Amendment requires the conviction to be set aside. The basis upon which the trial court determined unavailability is as follows. The alleged attack took place on May 1. The victim voluntarily entered a Wisconsin establishment called the Riverwood Center for Drug Treatment on about August 1. On August 7, she gave her deposition there. She stated that she was fearful because of threats from appellant's family or friends, and she had been encouraged by her family to leave Lafayette. At one point, quoted in appellant's brief, she denied having a drug problem when giving the deposition. Stretched to its very limits, the deposition could be considered sufficient to support the conclusion that she was a marginally drug-dependent person doing a three-week counseling stint at a pleasant Wisconsin venue. She was scheduled for release on August 21. On August 12, the trial commenced and it was completed on August 14 without her attendance. Her whereabouts were known throughout this period by the State and there is no basis in the record to believe that the condition for which she was being counseled was such as to prevent her

from attending the trial and testifying. This is not unavailability in the Sixth Amendment sense. *See Gallagher v. State* (1984), Ind.App., 466 N.E.2d 1382. The trial right to confront and cross-examine the prosecutrix before the trier of fact cannot be lost on such a showing.

I would reverse.