# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana



FILED

Jun 08 2012, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BETWEL BIRARI, | ) | |
| | ) | |
| Appellant-Defendant. | ) | |
| | ) | |
| vs. | ) | No. 49A02-1111-CR-1009 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt Eisgruber, Judge
The Honorable Steven Rubick, Magistrate
Cause No. 49G01-1107-FB-52231

**June 8, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Betwel Birari appeals his conviction for attempted rape as a class B felony. Birari raises two issues which we revise and restate as:

I.      Whether the evidence is sufficient to sustain his conviction; and

II.     Whether the prosecutor committed prosecutorial misconduct that resulted in fundamental error.

We affirm.

The relevant facts follow. Birari and A.J. both worked at a nursing home as certified nursing assistants and became friends. Birari told A.J. that he wanted to take their friendship to the "next level," and A.J. indicated that she just wanted to remain friends. Transcript at 30. At one point, Birari sent A.J. a text message that stated: "I pray that we get married one day." Id. at 42. Later, he sent A.J. a text message that stated: "To be honest with you, I like you much but you treat me like trash. Am sorry . . . ." Id. A.J. responded with a message that stated: "Well, I'm sorry you feel that way. I think you are immature. I told you from the beginning I only wanted to be friends. I do not have strong feelings for you and you can't understand that." Id. at 43.

On July 22, 2011, A.J. finished her shift at work at 11:00 p.m. and went to her mother's house with Birari. A.J. and Birari then went to pick up A.J.'s two-year-old cousin. The three then went to A.J.'s apartment which she shared with a roommate. A.J. had not discussed the possibility of taking her relationship with Birari to another level nor touched Birari in a romantic way during the evening.

It became late, and A.J. told Birari that he could stay over and that she would take him home in the morning. The apartment was not fully furnished and A.J. decided that Birari would sleep at the foot of the bed, A.J. would sleep in the middle, and her two-

2

year-old cousin would sleep at the top of the bed. A.J. was wearing sweatpants and a tank top when she went to bed, and Birari was wearing sweatpants and a shirt.

Sometime after 4:00 a.m., A.J. went to sleep and later woke up and found Birari, who was wearing only boxer shorts, on top of her and "felt his penis near [her] vagina." Id. at 58-59. Specifically, A.J. felt his penis touching her bare skin and that "it seemed like he was trying to find" her vagina, but his penis did not enter her vagina. Id. at 83. A.J. realized that she was no longer wearing her sweatpants. A.J. asked Birari what he was doing and Birari attempted to put his arms around her and said, "[A.J.], no, no." Id. at 60. A.J. "got [Birari] off immediately," turned on the light, put her pants on, and started swinging her fists at him. Id. at 61. Birari said, "Just let me go, please. Just let me go." Id. at 63. A.J. screamed for help from her roommate who responded and "started swinging on [Birari] as well." Id. at 64. A.J. and her roommate were able to remove Birari from the apartment despite his attempts to resist.

Once outside of the apartment, Birari, wearing only his boxer shorts, pushed back against the door. A.J. and her roommate were unable to close the door, and A.J. retrieved a knife to "try to get [Birari] away from the door." Id. at 66. A.J. chased Birari out of the building with the knife and she returned to the apartment. A.J.'s roommate called the police while A.J. was hyperventilating, and Birari yelled, "Please, don't call the police. Just kill me." Id. at 96. The police arrived and arrested him.

On July 26, 2011, the State charged Birari with two counts of attempted rape as class B felonies. The State later filed a motion to dismiss the first count, and the court granted the motion. Specifically, the State charged Birari with attempting to:

3

knowingly have sexual intercourse with [A.J.], a member of the opposite sex, when [A.J.] was unaware that the sexual intercourse was occurring, by engaging in conduct that constituted a substantial step toward the commission of the crime of Rape, that is, [Birari], after removing [A.J.'s] pants, got on top of [A.J.] and rubbed his erect penis on [A.J.'s] bare vagina . . . .

Appellant's Appendix at 40.

During the trial, A.J. and her roommate testified to the foregoing facts. A.J. testified that she felt Birari's penis near her vagina, that she felt his penis touching her bare skin and that "it seemed like he was trying to find" her vagina. Transcript at 83. During cross-examination, A.J. testified that Birari's penis had not touched her vagina at the point that she started striking him. The following exchange then occurred during redirect examination of A.J.:

> Q    [A.J.], I was hoping to avoid this. It will be awkward for everyone, but I think we need to talk about the female sex organ. I'm going to use a Kleenex box, if I might. The female sex organ: the labia majora, the labia minora, and the inner vagina. Please point – tell the jury where Mr. Birari's penis was touching you on July 23, 2011, when you woke up?
>
> A    Around this area, on the side.
>
> Q    Okay.
>
> THE COURT:    Are you marking the Kleenex box, [prosecutor]?
>
> [Prosecutor]:    On the Kleenex box she is talking about the inner portion of the labia majora.
>
> Q    And when you're talking about the vagina, are [you] talking in medical terms or are you talking about the inside of the vagina as you see it?
>
> A    I'm talking about the inside.

4

Q    But as far as your genitals, Mr. Birari's penis was touching them but not inside; is that right?

A    Correct.

Id. at 81-82.

After the State rested, Birari moved for a directed verdict.  Birari's counsel argued:

> They have to specifically prove that he rubbed his erect penis on her bare vagina, and there's been no proof of that.  "Vagina" is defined as: "A canal in a female mammal that leads from the uterus to the external orifice of the genital canal."  There hasn't been any testimony of that.  If you want to increase what the vagina definition means, no jury could reasonably find him guilty of that with the conflicting statements with her telling the officer that it didn't touch her labia or her vagina and her statements in court today . . . .

Id. at 144.  The court denied Birari's motion and stated:

> [T]he evidence before the jury is that [A.J.] awakened while Betwel Birari was on top of her with his penis near her genitals.  [The prosecutor], using a Kleenex box in unfortunate ways, demonstrated to the jury where the touching allegedly occurred.  There is now substantial evidence before the jury as to the female anatomy.  The jury can draw its own conclusions on the touching that has been alleged and determine whether that is sufficient to sustain a conviction.  I am not going to invade the province of the jury and make the ultimate conclusion.

Id. at 144-145.

During closing argument, Birari's counsel argued that there was no evidence that Birari touched A.J.'s vagina and that the word vagina is defined as "[t]he canal of a female mammal that leads from the uterus to the external orifice of the genital canal."  Id. at 164.  During rebuttal, the prosecutor argued that Birari "pulled his clothes off, pulled her pants off, took his bare penis and put it on her, whether it's her vagina or her vulva or her labia minora, majora."  Id. at 173.  The prosecutor stated that A.J. was telling the

5

truth and "the only bright spot I can see, that [A.J.'s two-year-old cousin] didn't have to experience what he wanted her to. Whether or not he wanted her to watch, I don't know . . . ." Id. at 159. The jury found Birari guilty as charged. The court sentenced Birari to eight years in the Department of Correction.

I.

The first issue is whether the evidence is sufficient to sustain Birari's conviction for attempted rape as a class B felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id. The uncorroborated testimony of one witness, even if it is the victim, is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991).

The offense of rape is governed in this circumstance by Ind. Code § 35-42-4-1(2), which provides that "a person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when . . . the other person is unaware that the sexual intercourse is occurring . . . commits rape, a Class B felony." An attempt is defined by Ind. Code § 35-41-5-1, which states in part that "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted." A

6

"substantial step" toward the commission of a crime, for purposes of the crime of attempt, is any overt act beyond mere preparation and in furtherance of intent to commit an offense. Hughes v. State, 600 N.E.2d 130, 131 (Ind. Ct. App. 1992). Whether a defendant has taken a substantial step toward the commission of the crime, so as to be guilty of attempt to commit that crime, is a question of fact to be decided by the trier of fact based on the particular circumstances of the case. Id. "[W]hen determining whether the defendant has taken a substantial step toward a crime, the focus is on what has been completed, not on what remains to be done." Hughes v. State, 600 N.E.2d 130, 132 (Ind. Ct. App. 1992). Thus, to convict Birari of attempted rape as a class B felony, the State needed to prove that Birari: (1) knowingly or intentionally; (2) took a substantial step; (3) toward having sexual intercourse; (4) with A.J. when she was unaware that the sexual intercourse was occurring.

Birari argues that the evidence is insufficient because: (A) there was a failure to prove the substantial step alleged in the charging information; (B) he did not have the intent to rape A.J.; and (C) A.J. was not unaware of the situation.

A.    Variance Between Charging Information & Proof at Trial

Birari argues that the charging information alleged that he rubbed his erect penis on A.J.'s bare vagina and that his conviction must be reversed because the State failed to prove the substantial step it specifically alleged in the charging information.[1]  The State

---

[1] Birari also argues that the State never established that his penis was erect as alleged in the charging information. However, the record reveals that Indianapolis Police Detective Jeremy Warman testified that A.J. told him that she "was awakened by Mr. Birari on top of her attempting to insert his erect penis in her vagina." Transcript at 137.

contends that Birari was not misled by the variance in the evidence from the allegations and specifications in the charge in either the preparation or maintenance of his defense. The State argues that the variance between the allegation that Birari rubbed his erect penis on A.J.'s vagina as a substantial step in an attempted rape and the proof that Birari's penis touched the inner labia majora of A.J.'s genitalia was not fatal. In his reply brief, Birari argues that the State incorrectly attempts to couch his argument as complaining of an immaterial variance between the charging information and the evidence presented.[2]

Birari essentially argues that there is a material variance between the charging information and the evidence produced at trial which resulted in insufficient evidence to convict him as charged. See Rupert v. State, 717 N.E.2d 1209, 1211-1212 (Ind. Ct. App. 1999) (addressing the defendant's argument of whether a variance between the information and the evidence was fatal in the context of the issue of whether the evidence was insufficient to support the defendant's conviction). Thus, we will address Birari's argument as one of an alleged variance between the charging information and the proof at trial.

An information must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Ind. Code § 35-34-1-2(d), and "must be sufficiently specific to apprise the defendant of the crime for which he is charged and to

---

[2] Birari cites portions of Chief Justice Emmert's opinion in Madison v. State, 234 Ind. 517, 130 N.E.2d 35 (1955), in his briefs in support of his argument. In Madison, Chief Justice Emmert concluded that a jury instruction was fatally defective and that there was a fatal variance amounting to a failure of proof between the averments of the charging affidavit and the evidence produced at trial. 234 Ind. at 526, 540, 130 N.E.2d at 39, 45. However, the four remaining Justices concurred in the reversal for the giving of the jury instruction, but disagreed with the reasoning on the variance. Id. at 541, 130 N.E.2d at 46.

enable him to prepare a defense." Bonner v. State, 789 N.E.2d 491, 493 (Ind. Ct. App. 2003) (quoting Jones v. State, 467 N.E.2d 1236, 1241 (Ind. Ct. App. 1984)). "A criminal defendant has the right to be advised of the nature and cause of the accusation against him. There must be consistency between the allegations charged and the proof adduced . . . ." Simmons v. State, 585 N.E.2d 1341, 1344 (Ind. Ct. App. 1992) (citation omitted). A variance is an essential difference between proof and pleading. Allen v. State, 720 N.E.2d 707, 713 (Ind. 1999). Not all variances are material or fatal, however. Id. The test to determine whether a variance between the proof at trial and a charging information or indictment is fatal is as follows:

> (1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;
>
> (2) will the defendant be protected in the future criminal proceeding covering the same event, facts, and evidence against double jeopardy?

Mitchem v. State, 685 N.E.2d 671, 677 (Ind. 1997) (quoting Harrison v. State, 507 N.E.2d 565, 566 (Ind. 1987)).[3] In other words, to award relief on the basis of a variance between allegations in the charge and the evidence at trial, the variance must be such as to either have misled the defendant in the preparation and maintenance of his defense

---

[3] The Court in Mitchem noted:

> Applying this test is essential because it addresses two constitutional guaranties of the accused in criminal prosecutions. Part one of the test meets the requirements under Art. 1, § 13 of the Indiana Constitution which entitles defendant "to demand the nature and cause of the accusation against him, and to have a copy thereof." The second part of the test for variance meets the requirements of Art. 1, § 14 of the Indiana Constitution which provides that "no person shall be put in jeopardy twice for the same offense." See Madison, 234 Ind. at 545-46, 130 N.E.2d at 48 (concurring opinion of Arterburn, J., in which three other justices concurred).

685 N.E.2d at 677 n.8.

with resulting harm or prejudice or leave the defendant vulnerable to double jeopardy in a future criminal proceeding covering the same event, facts, and evidence. Winn v. State, 748 N.E.2d 352, 356 (Ind. 2001).

We find Rupert v. State, 717 N.E.2d 1209 (Ind. Ct. App. 1999), instructive. In Rupert, the State charged the defendant with committing child molesting by forcing a one-year-old child to submit to an act of "deviate sexual conduct, to-wit: fellatio." 717 N.E.2d at 1211. On appeal, the defendant argued that the State was constrained by the charging information to prove that he performed fellatio on the child to obtain a conviction, and that sucking and nibbling on the child's scrotum did not constitute fellatio. Id. The court held that "[a]ssuming without deciding that Rupert's actions did not constitute fellatio, we conclude that the variance between the charging information and the evidence presented at trial is not material." Id. The court observed that the defendant's defense was not prejudiced by the charging information as the defendant was well aware of the allegedly criminal conduct of which he was accused. Id. at 1212. The court also held that it did not view double jeopardy as an issue. Id. The court concluded that "the variance between the specific act of criminal deviate conduct charged, fellatio, and the act upon which the conviction rests, sucking the scrotum, was not material" and that there was sufficient evidence to sustain the defendant's conviction. Id.

Here, Birari was well aware of the alleged criminal conduct of which he was accused. Indeed, Birari states in his reply brief that he "does not complain of a lack of notice, nor does he complain that the allegations mislead him in his defense." Appellant's Reply Brief at 4. With respect to the second prong, Birari states: "Neither

10

does [he] complain that he would be subject to future criminal prosecutions based upon this same incident." Id. Under the circumstances, we conclude that any variance was not material.

B.    Intent

Birari argues that his conduct does not demonstrate any intent to rape A.J. nor were his actions strongly corroborative of criminal culpability. Birari contends that his conduct showed that he liked A.J., hoped to have sex with her, and tried to initiate a consensual encounter.[4] The State argues that "the fact that A.J. woke up and thwarted [Birari's] plan to rape her while she was sleeping is the reason that this is an attempted crime, not a completed one." Appellee's Brief at 7.

With respect to Birari's argument that he lacked the intent to commit rape, we observe that "a person's intent may be determined from their conduct and the natural consequences thereof and that the intent may be inferred from circumstantial evidence." Coleman v. State, 546 N.E.2d 827, 831 (Ind. 1989), reh'g denied. "It is not required that a defendant make a direct statement of intent to rape nor is it necessary that clothing be removed in order to express such intent." Id. The record reveals that A.J. repeatedly told Birari that she merely wanted to remain friends. While A.J. was asleep in bed with her two-year-old cousin, Birari removed his clothes, removed A.J.'s sweatpants, and placed his erect penis near A.J.'s vagina. After A.J. and her roommate were able to remove Birari from their apartment, Birari yelled, "Please, don't call the police. Just kill me."

---

[4] Birari also argues that "[p]erhaps due to cultural differences, [he] misunderstood A.J.'s invitation and thought inviting him to sleep in her bed demonstrated a romantic interest in him." Appellant's Brief at 11-12. Birari does not cite to the record for this proposition and our review of the record does not reveal support for this statement.

11

Transcript at 96. We conclude that the State presented evidence of probative value from which a reasonable jury could have found that Birari acted with the requisite intent.

## C. Whether A.J. was Unaware

Birari contends that A.J. awoke and rejected his advances indicating that she was very much aware of the situation. To the extent that Birari argues that the statute governing rape "was not enacted to protect a woman who was both aware of her situation and capable of refusing consent" and attempts to distinguish this case from others where the victims had ingested alcohol or drugs which rendered them unable to consent, we find Birari's argument does not have merit. In Glover v. State, the court adopted the following definition of the term "unaware" in the context of the rape statute:

> "Unaware" is defined as "not aware: lacking knowledge or acquaintance; Unconscious." Webster's Third New International Dictionary 2483 (1986 ed.). We have noted that a person is unconscious during sleep. See Brooks v. Bloom, 151 Ind. App. 312, 279 N.E.2d 591, 595 (1972).

> Moreover, it is the general, if not universal, rule that if a man has intercourse with a woman while she is asleep, he is guilty of rape because the act is without her consent.

760 N.E.2d 1120, 1124 (Ind. Ct. App. 2002) (quoting Becker v. State, 703 N.E.2d 696, 698 (Ind. Ct. App. 1998)), trans. denied. A.J. was asleep during the time that Birari removed his clothes and her sweatpants and only woke up when Birari was on top of her and attempting to insert his erect penis in her vagina. We conclude that the State presented evidence of probative value from which a reasonable jury could have found that A.J. was unaware. See Graham v. State, 736 N.E.2d 822, 828 (Ind. Ct. App. 2000) (holding that the evidence was sufficient to support the defendant's conviction for rape as a class B felony where the defendant proceeded to have sexual intercourse with the

victim while she was asleep and unaware such intercourse was occurring), trans. denied. In summary, we conclude that the State presented evidence of probative value from which a reasonable jury could have found Birari guilty of attempted rape as a class B felony.

## II.

The next issue is whether the prosecutor committed prosecutorial misconduct that resulted in fundamental error. In reviewing a properly preserved claim of prosecutorial misconduct, we determine: (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected. Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006). Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. Id. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. Id.

When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. Id. If the party is not satisfied with the admonishment, then he or she should move for mistrial. Id. Failure to request an admonishment or to move for mistrial results in waiver. Id. Here, Birari did not object to the prosecutor's closing argument and did not request an admonishment or a mistrial. Thus, Birari has waived the issue.

Where, as here, a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim.

<u>Id.</u> More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. <u>Id.</u> Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. <u>Id.</u> It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable and substantial potential for harm." <u>Id.</u>

Birari argues that the prosecutor improperly informed the jury that A.J. was telling the truth. Birari cites the following portion of the prosecutor's rebuttal:

> To be dragged through the courtroom and being called a liar in front of strangers and her family and friends, to relive the most horrific moment in her recent memory? There's no motivation to lie here, ladies and gentlemen, and that's because she isn't. She's telling you the truth. She wasn't prepped. She wasn't given anything. She came in here and told you what happened.

Transcript at 172. Birari also points to the following portion of the prosecutor's closing argument:

> That's the only bright spot I can find, besides the fact that he didn't get to complete this act, is that that [A.J.'s two-year-old cousin] didn't have to wake up to this. That's the only bright spot I can see, that *she didn't have to experience what he wanted her to. Whether or not he wanted her to watch, I don't know*, but when you take the pants off and you take your clothes off and you do that next to her, then whatever is coming to you, quite frankly, you deserve.

<u>Id.</u> at 159 (emphasis added). Birari argues that there was no testimony regarding his interactions with the two-year-old and that the prosecutor "improperly intimated [that he] wanted the two year old to watch him having sex." Appellant's Brief at 23.

The State argues that the prosecutor properly argued that the jury could believe A.J. because the evidence indicated that she had no motive to lie and that it was an

14

undisputed fact that a two-year-old child was sleeping in the bed with A.J. and Birari during the attempted rape. The State also argues that even if the prosecutor's arguments were improper, there is no indication that the arguments resulted in fundamental error.

While we believe that the prosecutor's comments were improper, we cannot say that such conduct resulted in fundamental error. In addition to A.J.'s testimony, the State also presented the testimony of her roommate as well as a recording of the 911 call which included A.J. hyperventilating in the background. Also, before the prosecutor made the comments that Birari challenges on appeal, the prosecutor stated:

> The statements of the attorneys, what I am saying, what [the defense attorney] has said and what he will say is not evidence. We argue our positions to you, but it doesn't mean that what we say is evidence. So the things that you've heard that come from that table today, aren't evidence. None of them are.

Transcript at 157. Further, the jury was instructed:

> When the evidence is complete, the attorneys may make final arguments. These final arguments are not evidence. The attorneys are permitted to characterize the evidence, discuss the law and attempt to persuade you to a particular verdict. You may accept or reject those arguments as you see fit.

Appellant's Appendix at 58. The jury was also instructed as follows: "You are the exclusive judges of the evidence, which may be either witness testimony or exhibits," "[s]tatements made by the attorneys are not evidence," and "[y]our verdict should be based on the law and the facts as you find them." Id. at 55, 65-66. Under the circumstances, we cannot say that the prosecutor's comments resulted in fundamental error.

For the foregoing reasons, we affirm Birari's conviction for attempted rape as a class B felony.

Affirmed.

BAKER, J., and KIRSCH, J., concur.