**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**STANLEY L. CAMPBELL**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RODERICK VANDRELL LEWIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1201-CR-18 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D06-1102-MR-2

**August 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Roderick Vandrell Lewis appeals his convictions for two counts of felony murder.[1] Lewis raises one issue, which we restate as whether the evidence is sufficient to sustain his convictions. We affirm.

The facts most favorable to Lewis's convictions follow. On June 29, 1999, Christopher Hale had a conversation with sixteen year old Richard Rogers in the presence of Angela Lawson during which Rogers asked Hale to visit a drug house in Fort Wayne, Allen County, Indiana, operated by Rogers and fourteen year old Sidney Wilson. Hale declined because he and Wilson were having problems, and Rogers stated that he "would talk to [Wilson] to squash it." Transcript at 83. Sometime later in the evening, Hale, Lewis, and Kajuanta Mays asked Lawson to visit the drug house and inform them who was inside, and Hale gave Lawson twenty dollars. Lawson went to the house, bought a rock of crack cocaine, returned to the men, and informed them that Rogers and Wilson were the only persons in the house. Hale, Lewis, and Mays decided to visit the house and obtain drugs. Lewis knew of the men's intentions to take the drugs they wanted and that he "was going to get something out of it." Id. at 361. Lewis, Hale, and Mays planned for Hale to arrive at the house first and for Lewis and Mays to arrive later so that it would appear to be happenstance that all three men were at the house at the same time so that Wilson and Rogers would not believe that the men meant to harm them.

At some point, the three men entered the house and started smoking and drinking with Wilson and Rogers. Lewis was armed with a .38 special revolver, and Hale, who

---

[1] Ind. Code § 35-42-1-1 (Supp. 1997) (subsequently amended by Pub. L. No. 17-2001, § 15 (eff. Jul. 1, 2001); Pub. L. No. 151-2006, § 16 (eff. Jul. 1, 2006); Pub. L. No. 173-2006, § 51 (eff. Jul. 1, 1006); Pub. L. No. 1-2007, § 230 (eff. Mar. 30, 2007)).

Lewis described as a violent person who had had a lot of problems with people, was armed with a nine millimeter firearm. Hale stated that he had to use the restroom and went upstairs, and Wilson and Rogers sat downstairs. While Wilson was sitting on a couch, Hale walked down the stairs and stated "die bitch" while shooting his nine millimeter at Wilson. Id. at 97. Hale shot Wilson five times, including in his chest, abdomen, left armpit, left leg, and the middle of his back. Rogers and Lewis both "started going for" a shotgun that was in the room, and Hale turned out the lights in the room and told Rogers to "sit down mother f----r." Id. at 304, 354. Hale told Lewis to kill Rogers, and Lewis stated that he would not do it, handed his .38 revolver to Mays, and stated "if you want it . . . you do it." Id. at 304. Mays then shot Rogers five or six times, including several times in the head from a distance of six to eighteen inches.

Lawson, who was returning to the house to purchase additional drugs, observed Lewis, Hale, and Mays running away from the house. Lewis took the shotgun from the house with him. Lewis, Hale, Mays, and Lawson entered another house, went into the basement, and Lewis, Hale and Mays split up the money and drugs they had taken from the drug house. The men gave Lawson some drugs to pay a person for a ride to a hotel. Lawson arranged for a ride, and the driver was given approximately seven rocks of crack, which the driver recognized to be from the house of Wilson and Rogers. Lewis, Hale, Mays, and Lawson entered a hotel room, and the men "were sittin around laughin' and talkin" and discussing and describing the shootings. Id. at 97. At some point that night, Lawson and Lewis had sex or oral sex. At some point, Lewis's uncle buried the .38 revolver and it was later exhumed. Lewis went to Arizona and returned to Indiana, and in

3

March 2001 police stopped Lewis, Hale, and Mays and discovered the revolver in their vehicle.

On February 25, 2011, the State charged Lewis with Count I, felony murder for the death of Rogers; Count II, felony murder for the death of Wilson; Count III, robbery of Rogers as a class A felony; and Count IV, robbery of Wilson as a class A felony. A jury found Lewis guilty on all counts. The court sentenced Lewis to sixty-five years each for his convictions under Counts I and II, merged Count III into Count I and Count IV into Count II, and ordered the sentences under Counts I and II to be served consecutive to each other for an aggregate sentence of 130 years.

The issue is whether the evidence is sufficient to sustain Lewis's convictions. When reviewing the claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the verdict and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id.

Lewis maintains that the evidence was insufficient to support his felony murder convictions and the underlying robbery. Lewis acknowledges that he had some notion that Hale and Mays intended to rob Rogers and Wilson of their drugs and money but contends that the evidence was insufficient for a jury to have determined from his actions or words that he possessed the intent to assist Hale and Mays in a robbery, that he aided, induced, or caused Hale or Mays to shoot and kill Rogers and Wilson, or that the deaths

4

of Rogers and Wilson were a natural and probable consequence of any robbery attempt. The State argues that Lewis's conduct before the crimes took place, his active involvement in the crimes, his refusal to stop his companions from committing the offenses, and his conduct after the robbery and murders all permitted the jury to conclude that Lewis was an accomplice in the crimes and that the jury could reasonably have concluded that violence and murder would be the natural and probable consequence of a robbery based upon the fact that Lewis and his companions were armed and that there was bad blood between Wilson and Hale.

Ind. Code § 35-42-1-1 provides that a person who "kills another human being while committing or attempting to commit . . . robbery . . . commits murder, a felony." Ind. Code § 35-42-5-1 provides that "[a] person who knowingly or intentionally takes property from another person or from the presence of another person . . . by using or threatening the use of force on any person . . . or . . . by putting any person in fear . . . commits robbery, a Class C felony." "However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Class A felony if it results in serious bodily injury to any person other than a defendant." Ind. Code § 35-42-5-1.

The Indiana Supreme Court has held that "[a]ll participants in a robbery or attempted robbery which results in killing by one robber are deemed equally guilty of murder, regardless of which participant actually killed the victim." Williams v. State, 706 N.E.2d 149, 157 (Ind. 1999), reh'g denied, cert. denied, 529 U.S. 1113, 120 S. Ct. 1970 (2000). In Indiana there is no distinction between the responsibility of a principal

5

and an accomplice. Wise v. State, 719 N.E.2d 1192, 1198 (Ind. 1999). A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person has not been prosecuted for the offense. Ind. Code § 35-41-2-4. The factors that are generally considered to determine whether one person has aided another in the commission of a crime include: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. Wieland v. State, 736 N.E.2d 1198, 1202 (Ind. 2000).

A person's intent "may be determined from their conduct and the natural consequences thereof" and "intent may be inferred from circumstantial evidence." Coleman v. State, 546 N.E.2d 827, 831 (Ind. 1989), reh'g denied. It is within the province of the jury to draw an inference of knowledge or intent from the facts presented. Whatley v. State, 908 N.E.2d 276, 284 (Ind. Ct. App. 2009) (citing Gibson v. State, 515 N.E.2d 492, 496 (Ind. 1987)), trans. denied. See also Hampton v. State, 961 N.E.2d 480, 487 (Ind. 2012) ("[T]he *mens rea* element for a criminal offense is almost inevitably, absent a defendant's confession or admission, a matter of circumstantial proof"); Kondrup v. State, 250 Ind. 320, 323-324, 235 N.E.2d 703, 705 (1968) ("[T]he intent to commit a felony may be inferred from the circumstances which legitimately permit it.").

The evidence reveals that Hale, Mays, and Lewis planned to visit the drug house, that Lewis was aware of the plan to rob Wilson and Rogers, that Lewis knew that he was going to get something out of it, that Lawson was sent to the house to determine who was present there, that Lewis helped to plan the men's staggered arrival at the house so that

6

Wilson and Rogers would not realize the men intended any harm, that Lewis took his .38 revolver with him to the house, that Lewis knew that Hale took his nine millimeter to the house, that Lewis reached for the shotgun after Wilson had been shot to prevent Rogers from reaching it, that Lewis handed Mays his .38 revolver to shoot Rogers, that Lewis took the shotgun from the house, that Lewis later split the drugs and money taken from the house with Hale and Mays, and that Lewis had his uncle bury the .38 revolver. The jury heard testimony that Lewis knew that Hale had had previous altercations with Wilson and Lewis's testimony that drug dealing was "[e]xtremely dangerous" and that, if someone were to attempt to take drugs from a drug dealer, shootings and killings could happen and happened all the time. See Transcript at 365.

To the extent that Lewis points to his own testimony that he intended only to visit the drug house to smoke dope and have a good time and not to commit a robbery, we note that we do not judge the credibility of the witnesses and look only to the probative evidence supporting the verdict and the reasonable inferences therein. See Jones, 783 N.E.2d at 1139. Based upon the evidence presented at trial, the jury could have reasonably inferred from the evidence presented that Lewis possessed the requisite intent to participate in the robberies, that he was an accomplice to the robberies and murders, and that the killings of Rogers and Wilson were probable and natural consequences of the actions of Lewis, Hale, and Mays. Based upon our review of the record, we conclude that evidence of probative value exists from which the jury could have found that Lewis committed the charged offenses beyond a reasonable doubt.

For the foregoing reasons, we affirm Lewis's convictions.

7

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.